## 66327. PURCELL et al. v. ALLSTATE INSURANCE COMPANY.

CARLEY, Judge.

Appellants Perry and Behre Purcell are husband and wife. Mr. Purcell is self-employed and does business as Purcell Radiator Service. In 1976, Mr. Purcell purchased a Chevrolet Sport Van. The purchase was financed by Allstate Enterprises, Inc., and Mr. Purcell obtained this loan through an agent of appellee Allstate Insurance Company (Allstate). Credit life insurance in the amount of the loan was obtained from Allstate Life Insurance Company and covered the life of Mr. Purcell. Mr. Purcell also obtained insurance coverage on the vehicle from Allstate. This coverage was obtained through the same Allstate agent who had arranged the financing. The policy which was issued was denominated as a "business auto policy" and the named insured was listed as "Purcell Radiator Serv.," an "individual" business. Premiums were paid by checks drawn on the account of Purcell Radiator Service.

In 1981, while Mrs. Purcell was walking across a street, she was struck by an automobile and sustained extensive personal injuries. The automobile which struck Mrs. Purcell was being operated by Donald E. Majors. Mr. Majors carried only the basic no fault coverage, pursuant to which Mrs. Purcell received $2,500, an amount equal to approximately half of her medical expenses. Mr. and Mrs. Purcell subsequently filed individual suits against Majors. Discovery revealed that Mr. Majors' liability coverage contained a $10,000 limit, the full amount of which his insurer offered the Purcells in settlement of their pending actions. At that point, the Purcells filed an action in two counts against Allstate. In Count I, the Purcells sought to recover some $2,450 pursuant to the no fault provisions of the Allstate policy, an amount representing the balance of Mrs. Purcell's medical bills remaining after deducting the $2,500 payment from Mr. Majors' no fault carrier. In Count II, the Purcells sought to recover $15,000 pursuant to the uninsured motorist provisions of the Allstate policy, an amount representing the balance between that policy's $25,000 limit for such coverage and the $10,000 limit of Majors' liability policy. It is undisputed on the record before us that Allstate paid the Purcells the $2,450 that they sought as no fault benefits under the policy, leaving as the only issue remaining unresolved whether they were entitled to recover under the uninsured motorist provisions of the Allstate policy.

Because the Purcells' actions against Majors were still pending, Allstate filed its own complaint against the Purcells and Majors seeking a declaration that the Purcells would not be entitled to coverage pursuant to the uninsured motorist provisions of the Allstate policy in payment of any judgment that might be obtained against Majors. All parties agreed to the enjoining of the Purcells' lawsuits against Majors, and Allstate subsequently moved for summary judgment in the instant declaratory judgment action. The trial court granted Allstate's motion and it is from that order that the Purcells bring the instant appeal.

With regard to policies of insurance, as with any other contract, " '[t]he cardinal rule of construction is to ascertain the intention of the parties.' [Cit.]" *Alley v. Great American Ins. Co.,* 160 Ga. App. 597, 599 (287 SE2d 613) (1981). It is essentially Allstate's position that the intent of its policy was to provide coverage consistent only with the Chevrolet's status as a business vehicle and not as Mr. Purcell's personal automobile. In this regard, Allstate relies upon the fact that the named insured in the "business auto policy" is "Purcell Radiator Serv." rather than Mr. Purcell personally. Since the only definition by which Mrs. Purcell could be an "insured" under the policy for purposes of uninsured motorist coverage would be as a

"family member" (further defined in the policy as "a person related to [the named insured] by blood, marriage, or adoption who is a resident of the [named insured's] household . . ."), and since Mrs. Purcell is clearly not related by marriage to "Purcell Radiator Serv.," the named insured, Allstate asserts that no uninsured motorist coverage is afforded to Mrs. Purcell under the "business auto policy." See *Fowler v. U. S. Fid. & Guar. Co.,* 133 Ga. App. 842 (212 SE2d 486) (1975). Conceding that the result would be different if the intent of the policy was to insure the Chevrolet as Mr. Purcell's personal vehicle, Allstate's final assertion is that any lack of personal coverage in the instant case must be deemed the result of Mr. Purcell's failure to read the "business auto policy" which was issued. *Gilly's Sausage Co. v. Cotton States Mut. Ins. Co.,* 165 Ga. App. 105 (299 SE2d 413) (1983).

That the named insured on the policy is "Purcell Radiator Serv." rather than Mr. Purcell does not demonstrate that the intent of the policy was not to afford the coverage sought by the Purcells in the instant case. "A trade name is merely a name assumed or used by a person recognized as a legal entity. [Cits.] A judgment against one in an assumed or trade name is a judgment against him as an individual. [Cits.] 'An undertaking by an individual in a fictitious or trade name is the obligation of the individual.' [Cit.] The fact that [Mr. Purcell] purchased this automobile in the name that he used in doing business does not contradict the fact that he owned the automobile as an individual . . . Under [OCGA § 40-1-1 (34) and (38) (Code Ann. § 68A-101)] the owner of an automobile must necessarily be a natural person, firm, copartnership, association, or corporation. [Mr. Purcell] doing business in the trade name [Purcell Radiator Service] could be none of these except a natural person." *Samples v. Ga. Mut. Ins. Co.,* 110 Ga. App. 297, 299 (138 SE2d 463) (1964). Accordingly, it is clear that Mr. Purcell, not Purcell Radiator Service, was the owner of the vehicle insured by Allstate. Compare *Fowler v. U. S. Fid. & Guar. Co.,* supra. OCGA § 33-7-11 (a)(1) (Code Ann. § 56-407.1) provides that "[n]o automobile liability policy or motor vehicle liability policy shall be issued or delivered in this state to the *owner* of such vehicle . . . unless it contains an endorsement or provisions undertaking to pay the *insured* all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motorist vehicle . . ." (Emphasis supplied.) Accordingly, it would follow that Mr. Purcell, as the owner of the vehicle, was the "entity" to whom the uninsured motorist coverage was extended by Allstate's policy and was the true "named insured" in that regard. See O'Hanlon v. Hartford Acc. and Indemnity Co., 639 F2d 1019, 1024 (3d Cir. 1981) (citing *Samples v. Ga. Mut. Ins. Co.,* supra). Moreover,

there are at least two unexplained and interrelated circumstances which are inconsistent with a holding that, as a matter of law, the clear "intent" of the policy was to exclude all personal coverage thereunder.

The first is the inclusion of a certain endorsement in the original Allstate policy. It is a general rule that "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application made a part of the policy." OCGA § 33-24-9 (Code Ann. § 56-2410). The relevant endorsement in the instant case is entitled "Individual Named Insured" and is headed by the following cautionary language: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." The endorsement then provides in relevant part that, if the named insured is an individual, "the policy is changed as follows: . . . The words ['named insured'] *include [the named insured's] spouse* if a resident of the same household . . ." (Emphasis supplied.) While it is true that the endorsement provides that it is effective "if" the named insured is an individual, there is no explanation as to why such an endorsement would be included in a "business auto" policy issued to an "individual" business. No explanation for the inclusion of this endorsement is readily apparent except the reasonable inference that the intent was to make what would otherwise be a "business auto policy" issued to an "individual" business in effect a "personal" policy for at least some coverages afforded thereunder.

"In construing an insurance policy, '[t]he test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean. The policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney.' [Cit.] 'Where a provision in a policy is susceptible to two or more constructions, the courts will adopt that construction which is most favorable to the insured. [Cit.]' [Cits.]" *Greer v. IDS Life Ins. Co.,* 149 Ga. App. 61, 63 (253 SE2d 408) (1979). It was apparently the Purcells' understanding that the policy afforded them personal coverage. If the intent was that the policy insure only a "business auto" and not to extend any personal coverage, the question must become why an "Individual Named Insured" endorsement such as appears in the policy in the instant case was included in the "individual business auto policy." No answer is supplied on the record before us.

This analysis is somewhat related to the second unexplained circumstance in the instant case, that being Allstate's payment of Mrs. Purcell's no fault claim under its "business auto policy." Our

review of the relevant endorsement provisions regarding no fault coverage under the policy demonstrates that, under the circumstances of the case, the only way in which Mrs. Purcell apparently could be afforded coverage as an "eligible injured person" thereunder would be as a "relative" of the "named insured." For purposes of no fault coverage, a "relative" is further defined by the policy as *"the spouse* or any other person related to the *named insured,* whether or not temporarily residing elsewhere . . ."* (Emphasis supplied.) Thus, assuming that Mrs. Purcell was a "relative" of the "named insured" for purposes of no fault coverage under the policy, there is no explanation why under the same policy she would not be a "family member" of the same "named insured's" household for purposes of uninsured motorist coverage. On the record before us, this unexplained apparent inconsistency in Allstate's consideration of Mrs. Purcell's status under the policy precludes a finding, as a matter of law, that the clear intent of the policy was that she would not be afforded coverage under the uninsured motorist provisions. While Allstate's payment of Mrs. Purcell's no fault claim would not estop it to deny coverage under the policy's uninsured motorist provisions, *Washington v. Hartford Acc. & Indem. Co.,* 161 Ga. App. 431, 432 (2) (288 SE2d 343) (1982), it is a factor which can be considered in determining the "intent" of the parties to the contract. " 'The construction placed upon a [contract] by the parties thereto, *as shown by their acts and conduct,* is entitled to much weight and may be conclusive upon them.' [Cit.] It is well to keep in mind that the [insurer] prepared the contract." (Emphasis supplied.) *Copenhaver v. United American Inv. Co.,* 96 Ga. App. 562, 566 (101 SE2d 203) (1957).

For the reasons discussed above, the "intent" of the parties that the Allstate Policy not provide uninsured motorist coverage to Mrs. Purcell was not established as a matter of law and summary judgment was erroneously granted to Allstate. The trial court erred in granting summary judgment to Allstate on the basis that Purcell Radiator Service, a non-owning non-entity, was the only "named insured" under the policy.

*Judgment reversed. Deen, P. J., and Banke, J., concur.*

DECIDED SEPTEMBER 7, 1983 —
REHEARING DENIED NOVEMBER 16, 1983.

*James E. Hardy,* for appellants.
*Y. Kevin Williams, Arthur H. Glaser,* for appellee.