Edwin CARLSON and Iva Carlson, Plaintiffs and Appellants,

v.

DOEKSON GROSS, INC., d/b/a Doekson Gross Insurance Agents, Defendant, Third-Party Plaintiff and Appellee,

v.

INSURANCE COMPANY OF NORTH AMERICA, Third-Party Defendant and Appellee.

UNION INSURANCE AGENCY, Plaintiff and Appellant,

v.

Ed CARLSON, Defendant and Appellant,

and

UNION INSURANCE AGENCY and Ed Carlson, Plaintiffs, Defendants and Appellants,

v.

AMERICAN INSURANCE COMPANY, Additional Party Defendant and Appellee.

Civ. Nos. 10823, 10824.

Supreme Court of North Dakota.

Aug. 15, 1985.

Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for plaintiffs and appellants Edwin Carlson and Iva Carlson; argued by David L. Peterson, Bismarck.

Pearce, Anderson & Durick, Bismarck, for plaintiff and appellant Union Insurance Agency. Appearance by Joel W. Gilbertson, Bismarck.

Tossett & Balerud, Minot, for additional party defendant and appellee American Ins. Co.; argued by Andrew R. Tossett, Minot.

GIERKE, Justice.

Edwin Carlson, Iva Carlson, and Union Insurance Agency appeal from a judgment dismissing their claims against American Insurance Company. We reverse the judgment and remand for further proceedings.

On June 7, 1979, Willard Irwin was seriously injured while employed on Edwin and Iva Carlson's farm, commonly referred to as Harrington Ranch. Irwin and his wife sued Edwin Carlson in state district court, alleging that Carlson's negligence was the proximate cause of Irwin's injury. The Irwins also brought an action in federal district court against Massey Ferguson, Ltd. and Massey Ferguson, Inc., the manufacturer of the equipment Irwin was operating at the time of his injury, and Massey Ferguson filed a third-party complaint against Edwin Carlson.

At the time of the injury, Edwin Carlson had numerous insurance policies in effect. The instant appeal involves two policies: a comprehensive general liability policy and an "umbrella" or "excess" policy issued by American Insurance Company [hereinafter American]. These policies were procured by Edwin Carlson through Union Insurance Agency [hereinafter Union], and the declarations sheet on each policy lists the named insured as "Edwin O. Carlson dba Aero Block & Cement Company and Carlson Trucking." [1] Carlson notified American of the accident and tendered defense of the two Irwin lawsuits to American, but American denied coverage and refused to defend Carlson in the two actions.

On December 2, 1981, Union filed an action in small claims court against Edwin Carlson for additional premiums due. Carlson removed the action to district court and filed a counterclaim against Union alleging that Union had wrongfully failed to secure coverage for Carlson. Carlson and Union

moved that American be joined as an additional party defendant, and each filed a separate complaint against American requesting that the court determine whether Carlson's policies with American covered Irwin's injury. The court subsequently granted American's motion for dismissal of all claims against it, holding that Irwin's injury was not covered under Carlson's policies with American. Judgment was entered in accordance with Rule 54(b), N.D.R. Civ.P., and Carlson and Union have appealed.

The issue presented on appeal is an elementary one: Who is the "named insured" under the American policies? The trial court held that the policies covered Carlson only in his operations as "Aero Block & Cement Company" and "Carlson Trucking," and that "Harrington Ranch" was a separate entity which was not covered by the policies. Carlson and Union contend that Edwin Carlson is the named insured under the policies and that his farming activities are covered by both the comprehensive general liability policy and the umbrella policy.

■■■ Construction of a written contract of insurance is a question of law to be resolved by the court. *Aid Insurance Services, Inc. v. Geiger,* 294 N.W.2d 411, 413 (N.D.1980); *Kasper v. Provident Life Insurance Co.,* 285 N.W.2d 548, 553 (N.D. 1979); *Stetson v. Blue Cross of North Dakota,* 261 N.W.2d 894, 896 (N.D.1978). On appeal, this court will independently examine and construe the pertinent policy provisions to determine whether the trial court erred in its interpretation of the policy. *Aid Insurance Services, Inc. v. Geiger, supra,* 294 N.W.2d at 413; *Stetson v. Blue Cross of North Dakota, supra,* 261 N.W.2d at 896.

The provision which requires interpretation in this case is the designation of the named insured: "Edwin O. Carlson dba Aero Block & Cement Company and Carlson Trucking." We conclude that under

---

1. We note that in the umbrella policy a colon appears after the "dba" in the designation of the named insured. We find no significance in the additional colon, and treat the designations in the two policies as identical.

this designation the named insured is Edwin O. Carlson.

At the heart of the issue is American's contention that the various business enterprises operated by Edwin Carlson are separate entities. The trial court adopted this reasoning in its memorandum opinion:

"[N]one of the policies of insurance that Carlson had in effect *for any of his entities* provided coverage for the Irwin accident and Carlson could not reasonably expect that they did. Carlson had no specific policy of insurance which upon reading declared that the Irwin accident was covered.... The farming operation was insured separate and apart from anything else, as is apparent from the depositions. Carlson was content to continue the policy that Harrington had on his ranch, and his comprehensive general liability coverage policies were merely a renewal of previous policies taken out when he had not acquired the Harrington Ranch. *The divorcement and segregation of these entities is clear....*

"The Court is not pursuaded [sic] that the information Union Insurance Agency had respecting the purchase by Carlson of the Harrington Ranch was knowledge by Fireman's Fund through its agent that *a new entity had been engrafted as an insured upon its policies.*" [Emphasis added.]

A sole proprietorship which is conducted under a trade name is *not* a separate legal entity:

"The designation 'd/b/a' means 'doing business as' but is merely descriptive of the person or corporation who does business under some other name. Doing business under another name does not create an entity distinct from the person operating the business. The individual who does business as a sole proprietor under one or several names remains one person, personally liable for all his obligations."

*Duval v. Midwest Auto City, Inc.,* 425 F.Supp. 1381, 1387 (D.Neb.1977); *see also Southern Insurance Co. v. Consumer Insurance Agency, Inc.,* 442 F.Supp. 30, 31–32 (E.D.La.1977). Thus, the trial court's reliance on the "separate entities" operated by Carlson is erroneous. There was only one legal "entity"—Edwin Carlson.[2]

Other courts have reached similar results in cases involving insurance policies naming as insured a trade name of an individual's business. For example, in *O'Hanlon v. Hartford Accident and Indemnity Co.,* 639 F.2d 1019 (3d Cir.1981), an umbrella policy had been issued to "Coe Management Company," which was a trade name under which O'Hanlon conducted business. O'Hanlon's son was injured in an auto accident while a passenger in a friend's vehicle, and coverage was sought under a provision in the umbrella policy which provided coverage to relatives of the named insured residing in the same household. The court held that the designation of the trade name was synonymous with the individual:

"However, if the description of named insured in the UM [uninsured motorist] coverage endorsement of the policy as Coe Management Company is to be read as synonymous with Patrick J. O'Hanlon, then it is plain that Brian O'Hanlon did in fact achieve status as a person insured under the UM endorsement simply by being a relative of Patrick J. O'Hanlon residing in the same household.

"We believe that we are obliged to read the designation of the named insured in the UM endorsement as a synonym for Patrick J. O'Hanlon, or at least

---

2. There is some confusion in the record regarding the status of Aero Block & Cement Company. Carlson asserts in his brief that Aero Block is a corporation, whereas Union's brief states that Aero Block is a sole proprietorship. If Aero Block is indeed a corporation the interpretation of the named insured designation in the two American policies is further complicated, because an individual obviously cannot "do business as" a corporation. We conclude, how-ever, that any potential ambiguity created by such a designation is irrelevant to the issue in this case, which is whether Edwin Carlson is a named insured. No issue has been raised regarding coverage of Aero Block as a corporation under the policies which would require resolution of the issue. We will therefore, for the sake of clarity, treat Aero Block as a sole proprietorship for purposes of this opinion.

as though the UM endorsement had identified the named insured as "Patrick J. O'Hanlon, trading as Coe Management Company." *O'Hanlon, supra,* 639 F.2d at 1024.

In so holding, the court noted that it was not relying upon the doctrine of reformation or any ambiguity in the policy:

"INA argues that it would be error to apply the doctrine of reformation or to create an ambiguity where none exists in order to equate Coe Management and Patrick J. O'Hanlon. We agree that application of either theory to this case would be contrived. We are persuaded by the cases arising under non-owned and temporary substitute coverage which use neither reformation nor ambiguity in holding that an insured's trade name and given name should be equated. We, therefore, hold, as do the cases cited and discussed above, that where an insured purchases a policy in a trade name, the policy will be viewed as if issued in his given name." *O'Hanlon, supra,* 639 F.2d at 1025.

Similarly, in *Purcell v. Allstate Insurance Co.,* 168 Ga.App. 863, 310 S.E.2d 530 (1983), the Court of Appeals of Georgia held that Purcell was the named insured under a "business auto policy" issued to "Purcell Radiator Serv.," and that Purcell's wife could recover as a relative of the named insured. The court based its decision primarily on the inability of Purcell Radiator Service, a sole proprietorship with no separate legal identity, to own the vehicle listed in the policy. The court characterized Purcell Radiator Service as a "non-owning non-entity," and concluded that "Purcell, as the owner of the vehicle, was the 'entity' to whom the uninsured motorist coverage was extended by Allstate's policy and was the true 'named insured' in that regard." *Purcell, supra,* 168 Ga.App. at 866–67, 310 S.E.2d at 532–33.

■ In this case, where Carlson's name appears along with the trade names he does business under, we conclude that Carlson is the named insured under the policies. Carlson owns the assets of the various businesses, and he is the "entity" who would be subject to the liability indemnified against by the two American policies. Aero Block & Cement Company and Carlson Trucking are not separate legal entities: they cannot own property, are not subject to liability in any suit, and cannot enter into a contract. The "party" who contracted for the insurance in this case was Edwin Carlson—there was no other legal entity which was capable of entering into the contract. We hold that when the designation of the named insured is in the form "Individual dba . . . ," the individual is the named insured, irrespective of whatever language follows the "dba."

This court was presented with a similar situation in *Prince v. Universal Underwriters Insurance Co.,* 143 N.W.2d 708 (N.D.1966). Prince owned and operated an automobile dealership, implement dealership, service station, bulk oil plant, and appliance sales business. The auto dealership was incorporated; the other businesses were sole proprietorships operated under various designations. Prince purchased a garage liability policy which designated the named insured as "Regent Garage Company (A corporation) and/or Leonard E. Prince d/b/a Regent Implement Company, Regent, Hettinger County, North Dakota." In holding that a fire at Prince's bulk oil plant was covered under the policy, the court concluded that the policy covered all of Prince's business operations, including the bulk oil business.

■ Although the reasoning employed by the court in *Prince* varies somewhat from our reasoning in this case, *Prince* supports the proposition that the designation of the named insured will not necessarily limit the risks insured against. As the court noted, if the insurer wished to limit its liability "it could have done so by an endorsement to the policy." *Prince, supra,* 143 N.W.2d at 714. We agree that any limitation on coverage should be accomplished by specific exclusions or endorsements to the policy, not by a limiting designation of the named insured.

■ Two other issues relating solely to the umbrella policy were addressed by the trial court in its memorandum opinion and

warrant comment. First, the court held that coverage under the umbrella policy was precluded by the definition of "named insured," which required notification if additional "organizations" were acquired by the named insured. The relevant policy provision states:

"As used in this policy the following words or phrases mean:

NAMED INSURED: (1) the named insured stated in the declarations; (2) any wholly owned subsidiary of the named insured now existing or hereafter acquired; or (3) any other organization the control and management of which is now held or hereafter acquired by the named insured; provided under (2) with respect to any subsidiary hereafter acquired and under (3) with respect to any other organization the control and management of which is hereafter acquired this policy will apply only for the first 30 days following date of such acquisition unless the named insured reports such acquisition to the Company and appropriate endorsement is issued to form a part hereof."

Because we have concluded that Edwin Carlson is the named insured under the policy, it is irrelevant that he did not advise American of his purchase of Harrington Ranch. Harrington Ranch is not a separate entity or "organization" which must be listed as a named insured before coverage is afforded. Subsection 3 of the above provision applies only if the newly acquired "organization" is a separate legal entity which must be listed as a named insured. Edwin Carlson is the named insured under the umbrella policy, and it is unnecessary to separately list Harrington Ranch, a sole proprietorship, as a named insured to afford coverage to Carlson's activities on the ranch. Absent a specific exclusion limiting coverage, all of Carlson's business enterprises operated as sole proprietorships were covered by the umbrella policy.

■ The trial court also found that coverage under the umbrella policy was precluded by Carlson's failure to obtain primary coverage for the Irwin accident. In the endorsement to the umbrella policy listing the schedule of primary policies, a workmen's compensation and employer's liability policy in the amount of $100,000 for each occurrence is listed. The trial court concluded that failure to obtain the primary coverage precluded coverage under the umbrella policy, based upon Clause 11 of the "Conditions" section of the umbrella policy:

"MAINTENANCE OF PRIMARY INSURANCE

"Insurance afforded by the primary policies described in item 6 of the declarations with limits of liability not less than as stated in item 6 of the declarations, or renewals or replacements thereof not more restricted, shall be in full effect at the inception of this policy and shall be maintained during the period of this policy, except for reduction of aggregate limits solely as a result of payment of claims arising out of occurrences during this policy period. If such primary insurance is not maintained in full effect by the Insured, or if any limits of liability of a primary policy are less than that stated in item 6 of the declarations, or if there is any change in the scope of coverage under any primary insurance, the insurance afforded by this policy shall apply in the same manner as though such primary policies and limits of liability as stated in item 6 had been in effect, so maintained and unchanged."

We do not read this provision to wholly deny coverage if the primary policy is never acquired. The trial court made a distinction between a situation where the primary policy is in place at the time the umbrella is purchased and later allowed to lapse, and a situation where the primary coverage is never acquired. We see no such distinction in Clause 11 of the policy. Clause 11 merely provides that if for any reason primary coverage as listed in the endorsement is unavailable, the umbrella provides coverage as if the primary coverage had been in effect. Any other interpretation would allow the company to escape liability on a risk for which it has charged premiums.

The company is not prejudiced by this interpretation of Clause 11. Whether or not the primary coverage is in effect, the company's potential liability is the same—

coverage under the umbrella policy does not apply until the declared primary coverage threshold is met. We therefore conclude that coverage under the umbrella policy is not wholly precluded by any failure to obtain primary coverage as listed in the endorsement.[3]

For the foregoing reasons, we conclude that the trial court erred in granting judgment dismissing all claims against American. We reverse the judgment and remand to the district court for further proceedings in accordance with this opinion.[4]

ERICKSTAD, C.J., LEVINE and VANDE WALLE, JJ., and VERNON R. PEDERSON, Surrogate Judge, concur.

PEDERSON, Surrogate J., sitting in place of MESCHKE, J., disqualified.

---

3. We express no opinion on whether there has in fact been a failure to obtain primary coverage as required by the umbrella policy. Because we are remanding to the district court for further proceedings, we leave this issue for determination on remand. This issue may also be affected by the trial court's final determination on coverage under the comprehensive general liability policy.

4. We note that American in its brief intimates that it may have further defenses to coverage based upon policy provisions which were not addressed by the district court. We do not intend to foreclose any right of American to raise such defenses. If no further defenses are raised, however, the district court should enter judgment in favor of the Carlsons declaring that coverage is provided under the American policies for the Irwin accident.