# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

No. 02-2303
_____

David L. Edgley,                                *
                                                *
        Plaintiff/Appellee,                     *
                                                *
    v.                                          *
                                                *
Harold Joseph Lappe,                            *
                                                *
        Defendant,                              *
                                                *
Dakota, Minnesota & Eastern                     *
Railroad Corporation,                           *
                                                *    Appeal from the United States
        Defendant/Third                         *    District Court for the
        Party Plaintiff,                        *    District of Minnesota.
                                                *
    v.                                          *
                                                *
Krause & Rollins,                               *
                                                *
        Objector,                               *
                                                *
    v.                                          *
                                                *
National Liability & Fire                       *
Insurance Company, a                            *
Connecticut Corporation,                        *
                                                *
        Garnishee/Appellant.                    *

_____

Submitted: May 16, 2003

Filed: September 15, 2003
_____

Before SMITH and HANSEN, Circuit Judges, and READE,[1] District Judge.
_____

SMITH, Circuit Judge.

National Liability & Fire Insurance Company ("National") appeals a judgment entered against it in a garnishment action. David Edgley filed an underlying action to recover damages for personal injuries he received in an accident involving an employee of National's insureds, Benita and Harold Lappe, who owned and operated a taxicab company. National did not defend the Lappes in that lawsuit and denied coverage based upon explicit exclusions contained in the insurance policy. Edgley settled his lawsuit against the Lappes and then filed this garnishment action against National, which was not a party to the settlement negotiations and agreement between Edgley and the Lappes. After the district court[2] rejected National's defenses, the court–following a bench trial–awarded Edgley $600,000. National now appeals the reasonableness of that decision and the court's denials of its pre- and post-trial motions. Because we agree that National's policy did not afford coverage to the Lappes, we reverse the district court's decision and dismiss the action.

_____

[1] The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, sitting by designation.

[2] The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

-2-

I.

*Facts*

Edgley, a passenger in a taxicab, sustained injuries when a truck rear-ended the taxi in November 1991. Edgley filed suit against the Lappes, taxi driver Raymond Weise, the owners and driver of the truck, and Edgley's employer Dakota, Minnesota & Eastern Railroad Company. Edgley settled his claims against these defendants in March 1995. The settlement purportedly included a full and final release of all of his claims against all parties and participants; however, the release also indicated that Edgley wished to preserve his claims against Lappe and Weise and their insurers, including National. Edgley notified National about the settlement negotiations prior to trial, but National declined coverage and refused to participate.

Several months after reaching the settlement, Edgley filed a document in district court entitled "Agreement Pursuant to *Drake v. Ryan*[3] and Stipulation for Entry of Judgment Pursuant to *Miller-Shugart*.[4]" According to the filing, four matters had been resolved. In the first two, Edgley settled claims against his employer and the owners and driver of the commercial truck. In the third, Lappe and Weise agreed to the entry of judgment against them in the amount of $600,000 collectable only from National. Lastly, Edgley released the Lappes and Weise from personal liability.

With judgment in hand, Edgley commenced this garnishment action against National in district court contending that the settlement bound National even though

---

[3] *Drake v. Ryan*, 514 N.W.2d 785, 788 (Minn. 1994) (holding that a plaintiff can "dissect" a defendant's liability by releasing some claims and preserving others).

[4] *Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982) (allowing an insured, whose insurer disputed coverage, to settle with the plaintiff and stipulate to a judgment incorporating the settlement terms, thus allowing the plaintiff to seek collection on that judgment in a garnishment proceeding against the insurer if the insurer received notice of the settlement).

it did not participate.[5] National defended the garnishment action based upon the plain language of its policy, which excluded coverage for substitute vehicles owned personally by the Lappes. The car in which Edgley was injured, a 1971 Buick LeSabre ("Buick"), belonged to the Lappes as a personal vehicle insured through American Family Insurance Company ("American Family").[6] The Lappes, who operated Lappes Express Cab as a sole proprietorship, owned and operated two licensed cabs insured with National. One of the cabs, however, was out of service on the day of the wreck, so the Lappes substituted the Buick for that vehicle.

The National policy covered temporary substitute automobiles, subject to two conditions: 1) one of the two covered vehicles had to be out of service, and 2) the Lappes could not own the substitute vehicle. The National policy, issued to "Harold and Benita Lappe dba Lappes Express Cab," defined "substitute vehicle" as:

> Any "auto" *you do not own* while used with the permission of its owner as temporary substitute for a covered "auto" you own that is out of service because of its:
> a. Breakdown;
> b. Repair;
> c. Servicing;

---

[5] The district court determined that despite the settlement language, Edgley intended to retain garnishment rights against National to collect damages pursuant to the settlement agreement with Lappe and Weise.

[6] Lappe had not licensed or insured the Buick as a commercial vehicle with American Family and, in fact, American Family denied coverage for that reason for Edgley's personal-injury claim.

d. "Loss"; or

e. Destruction.

(Emphasis added.)

Based on this definition, National denied coverage after determining that the Buick was not qualified to be a "substitute vehicle" because the Lappes owned it.[7] The district court disagreed and found that National's policy was "inherently ambiguous" because the purpose of the clause was not "undisputedly effectuated by the plain language of the contract." Based upon the ambiguity it found, the district court read the policy in the Lappes' favor and determined that coverage existed for the Buick under the temporary substitute automobile clause. The district court denied National's summary judgment motion and motion for judgment as a matter of law and refused to grant it a new trial. On appeal, National challenges the district court's interpretation of the contract.

## II.
### *Standard of Review*

We review the district court's denial of a motion for judgment as a matter of law de novo using the same standards as the district court. *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1505 (8th Cir. 1992). A motion for judgment as a matter of law presents a legal question to the district court and this court on review "whether there is sufficient evidence to support a jury verdict." *White v. Pence*, 961 F.2d 776, 779 (8th Cir. 1992). We view the "evidence in the light most favorable to the prevailing party and must not engage in a weighing or evaluation of the evidence or consider questions of credibility." *Id.* Judgment as a matter of law is appropriate only when all

---

[7] National included this argument in a motion for summary judgment filed prior to trial and in motions for judgment as a matter of law or for new trial filed after the court entered its judgment and order.

of the evidence points one way and is "susceptible of no reasonable inference sustaining the position of the nonmoving party." *Id.*

We review a district court's interpretation of the contractual provisions of an insurance policy de novo as a question of law. *Noran Neurological Clinic, P.A. v. Travelers Indem. Co.*, 229 F.3d 707, 709 (8th Cir. 2000). The parties agree that Minnesota law governs this diversity action.

## III.
### *Analysis*

National challenges the district court's determination that the insurance policy was ambiguous. The district court based its decision on the purpose and public policy of such provisions.[8] National asserts that the district court created an ambiguity where one did not exist. Without ambiguity, the court need only enforce the contract as written. If enforced as written, the subject contract provides no coverage for the Lappes.

We reach a different conclusion than that of the district court in our de novo review of the insurance contract. We find the contract to be without ambiguity. When reviewing the construction of insurance policies, general contract principles govern. *Lobeck v. State Farm Mutual Automobile Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998). "In interpreting a policy exclusion, any ambiguity in the language of the policy must be construed in favor of the insured." *Henning Nelson Constr. Co. v. Fireman's Fund American Life Ins. Co.*, 383 N.W.2d 645, 652 (Minn. 1986). If, however, the

---

[8] National raises three points on appeal including whether coverage existed under its commercial policy, whether the *Miller-Shugart* agreement was collusive, and whether the *Miller-Shugart* agreement was reasonable. We need only address the first point because its resolution renders the subsequent points moot.

contract is clear and unambiguous, then the language is given its plain and ordinary meaning. *Lobeck*, 582 N.W.2d at 249; *American Commerce Ins. Brokers, Inc. v. Minnesota Mutual Fire & Casualty Co.*, 551 N.W.2d 224, 227–28 (Minn. 1996). Moreover, when a provision within an insurance policy is subject to both a reasonable and unreasonable interpretation, the reasonable construction controls, thereby eliminating any ambiguity. *Mutual Service Casualty Ins. Co. v. Wilson Township,* 603 N.W.2d 151, 153 (Minn. Ct. App. 1999). There is a duty to "fastidiously guard against the invitation to create ambiguities where none exist." *Columbia Heights Motors, Inc. v. Allstate Ins. Co.*, 275 N.W.2d 32, 36 (Minn. 1979). There is no need, in this case, to look beyond the plain language of the contract.[9]

Under the policy, the Lappes could not own the Buick for it to qualify as a substitute vehicle. The Lappes operated their taxi company as a sole proprietorship. The "dba" designation in the Lappes' business name–"Harold and Benita Lappa dba Lappes Express Cab"–does not create a separate business entity from the Lappes as individuals. Minnesota law–and the law of a majority of the jurisdictions that have addressed this issue–hold that a "dba" designation does not create a separate entity

_____

[9] The court does not consider extrinsic evidence when determining if a contract is ambiguous. *See In re Hennepin County 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 498 (Minn. 1995). "[A]n insurance policy is still a contract, and where its provisions are unambiguous the courts have no right to thrust upon the insurer a risk that it did not accept and for which it was not paid a premium." *Simon v. Milwaukee Automobile Mut. Ins. Co.*, 115 N.W.2d 40, 49 (Minn. 1962); *see also Berken v. Beneficial Standard Life Ins. Co.*, 221 N.W.2d 122, 124 (Minn. 1974) ("It is clear that the clause before us meets this standard in that it is unambiguous and unequivocally states the circumstances under which coverage will be denied. It is therefore unnecessary to resort to a determination of the subjective intent of the parties.").

in these circumstances.[10] The Lappes, as individuals, owned the Buick and the taxicabs, regardless of the existence of their sole proprietorship.

The district court took a different approach. The court looked beyond the plain language of the contract and found ambiguity in its provisions by looking to public policy considerations. For authority, the district court cited the dissenting opinion in *Gabrelcik v. National Indemnity Company*, 131 N.W.2d 534 (Minn. 1964). The *Gabrelcik* dissent described the purpose of the temporary substitute automobile provision as "to prevent the same policy from being used to provide coverage for vehicles other than those for which a premium has been paid." *Id.* at 535. The provision prevents an insured from purchasing one policy for one automobile, but securing coverage for every car he owns without paying the proper premiums. The district court reasoned that because the Lappes paid a premium on the Buick to American Family, they were not attempting to defraud the insurers by seeking more coverage than that for which they paid. The district court then concluded that a no-

---

[10] *See, e.g.*, *O'Hanlon v. Hartford Acc. & Indem. Co.*, 639 F.2d 1019 (3d Cir. 1981); *Duval v. Midwest Auto City, Inc.*, 425 F. Supp. 1381 (D. Neb. 1977), *affirmed* 578 F.2d 721 (8th Cir.1978); *Pinkerton's v. Superior Court*, 57 Cal. Rptr. 2d 356 (Cal. Ct. App. 1996); *Providence Wash. Ins. v. Valley Forge*, 50 Cal. Rptr. 2d 192 (Cal. Ct. App. 1996); *Allstate Ins. Co. v. Willison*, 885 P.2d 342 (Colo. App. 1994); *Chmielewski v. Aetna Cas. and Sur. Co.*, 591 A.2d 101, 113 (Conn. 1991); *Purcell v. Allstate Ins. Co.*, 310 S.E.2d 530 (Ga. 1983); *Samples v. Ga. Mutual Ins. Co.*, 138 S.E.2d 463 (Ga. App. 1964); *Georgantas v. Country Mut. Ins. Co.*, 570 N.E.2d 870 (Ill. 1991); *Trombley v. Allstate Ins. Co.*, 640 So.2d 815 (La. App. 1994); *Bushey v. Northern Assurance*, 766 A.2d 598 (Md. 2001); *Gabrelcik v. National Indemnity Company*, 131 N.W.2d 534 (Minn. 1964); *Hall v. Auto-Owners Ins. Co.*, 658 N.W.2d 711 (Neb. 2003); *Toulousaine de Distrib. v. Tri-State Seed & Grain*, 520 N.W.2d 210 (Neb. 1994); *Carlson v. Doekson Gross, Inc.*, 372 N.W.2d 902, 906 (N.D. 1985); *Recalde v. ITT Hartford*, 492 S.E.2d 435 (Va. 1997).

coverage finding would circumvent the other purpose of the provision, that is to benefit the insured. In the district court's view, the Lappes could have reasonably believed that "Harold and Benita Lappe dba Lappes Express Cab" identified a separate business entity distinct from themselves individually, thus allowing it to be covered under the National policy.

Here, the plain language of the exclusion does not permit the insured, Harold and Benita Lappe dba Lappe's Express Cab, to use another vehicle owned by them to replace a covered vehicle. This language is very specific. And Minnesota law indicates that an individual and a sole proprietorship are the same "entity" for purposes of personal property ownership. As such, any automobile the Lappes own, either individually or through their sole proprietorship, is excluded from coverage under the plain language of National's temporary substitute automobile provision. The district court erred in looking beyond the language of the provision to determine intent or policy considerations. The judgment of the district court is reversed and the garnishment action dismissed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.