[Civ. No. 48360. Second Dist., Div. One. July 30, 1976.]

IGNACIO G. GONZALEZ et al., Plaintiffs and Appellants, v.
ST. PAUL MERCURY INSURANCE COMPANY,
Defendant and Respondent.

**COUNSEL**

Kruse & Katsky and Michael D. Daniels for Plaintiffs and Appellants.

Burd & Paquette, Bonelli, Malone, Wood & Lyden and Stanley Sapiro for Defendant and Respondent.

OPINION

**THOMPSON, J.**—The case at bench involves construction of an exclusionary clause of an all risk homeowner's policy of liability insurance. The clause reads in pertinent part: "[T]his Policy does not apply . . . under [the all risk homeowner's coverage] to the ownership, maintenance, operation, use, loading or unloading of . . . automobiles . . . while away from the premises . . . ." Applying traditional rules of construction of insurance policies, we conclude that the exclusion does not apply to, and the policy hence indemnifies against, liability of the insured for an accident away from the premises arising out of the insured's negligent repair on his premises of the brakes of his automobile. Accordingly, we reverse a judgment for the defendant insurer.

The relevant facts of the case at bench are either undisputed or stipulated.

Defendant, St. Paul Mercury Insurance Company, issued its homeowner's policy of liability insurance to Ernest Martinez. By "Coverage E," St. Paul obligated itself to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury or property damage to which this insurance applies, caused by an occurrence . . . ." The policy defines "injury" as including bodily injury and death, and "occurrence" as "an accident . . . which results, during the policy period, in injury . . . neither expected nor intended from the standpoint of the insured." Excluded from the policy coverage are the risks described in the portion of the policy quoted in the first paragraph of this opinion.

On June 14, 1971, while the policy was in effect, Martinez, the insured, on his premises negligently repaired the brakes of his Ford automobile. Five weeks later, while driving the Ford at a point away from the premises, Martinez struck and killed Julian Gonzalez, the son of Ignacio and Antonia Gonzalez, the plaintiffs in the case at bench. The parties stipulated that the death of Julian "was a proximate result of the negligent conduct of Ernest Martinez in the repair of his brakes on his Ford vehicle . . . ."

On August 20, 1971, Ignacio and Antonia Gonzalez filed suit against Martinez for the wrongful death of their son. Notice of the action was given to St. Paul no later than April or May of 1973. St. Paul did not participate in the defense of the action. On November 6, 1974, judgment

was entered in favor of Ignacio and Antonia Gonzalez in the wrongful death action. St. Paul did not pay the judgment. Martinez assigned all of his right and interest in the policy to Mr. and Mrs. Gonzalez who, on January 24, 1975, filed the action which is the case at bench, naming St. Paul as the defendant.

The trial court found that: (1) the "acts complained of" did not occur on the premises of Ernest Martinez; (2) the " 'occurrence' as defined in the policy of insurance took place when plaintiffs' [son] was struck . . . and not when the repairs to the braking system [were made], approximately one month before"; (3) "the ownership, maintenance, use and operation of the motor vehicle . . . which caused the death . . . was away from the premises of Ernest Martinez"; and (4) "the repair work on the braking system of [the] vehicle was use and maintenance of [the] vehicle within the terms of the policy." The trial court concluded that there was no coverage under the policy "for the damages complained of in the [c]omplaint." It gave judgment for defendant St. Paul.

 Key findings of the trial court are contrary to the undisputed facts before it and to the stipulation of the parties. The conclusion reached by the trial court is thus not supported by the evidence.

 Compelling precedent dictates that the coverage portion of the policy of insurance in the case at bench be "interpreted broadly so as to afford the greatest possible protection to the insured [citations] [and the] exclusionary clause [be] interpreted narrowly against the insurer [citations]" with ambiguities in each resolved in the same fashion. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 101-102 [109 Cal.Rptr. 811, 514 P.2d 123].)

 So construed, the coverage portion of the policy extends to the risk of liability for the damage in issue in the case at bench. The policy is an all risk and not a special peril policy. It indemnifies against liability arising from an accident which, during the policy period, results in injury or death. Here it is agreed by the parties that the accident which caused the death of Julian Gonzalez occurred during the policy period by reason of conduct of the insured.

The policy thus covers the particular incident here involved unless the risk is excluded. The policy does not exclude the risk when its exclusionary provisions are construed narrowly. The exclusion is of liability for damage arising out of "the ownership, maintenance,

operation [or] use . . . of . . . automobiles . . . while away from the premises . . . ." Here the liability of the insured arose from two concurrent causes, the use of the automobile away from the premises and the negligent repair of the brakes of the automobile on the premises. Construing the phrase "while away from the premises" in favor of coverage, it must be interpreted to modify both "maintenance" and "use." Hence liability arising from maintenance of the car on the insured's premises is not excluded.

That conclusion is supported by analysis of California precedent. In *Herzog* v. *National American Ins. Co.* (1970) 2 Cal.3d 192 [84 Cal.Rptr. 705, 465 P.2d 841], our Supreme Court considered an insured's claim that because a homeowner's insurance policy covered accidents involving the use of vehicles on the "ways immediately adjoining" the insured's premises, the provisions of Vehicle Code section 16451 rendered the territorial limitation void, thus converting the homeowner's policy into general automobile liability insurance. Applying the principle of reasonable expectation of the parties in construction of the policy, the court rejected the insured's position. (2 Cal.3d at p. 197.) It noted, however, "It is clear, of course, that homeowner's and automobile . . . policies may in some circumstances provide overlapping coverage." (2 Cal.3d at p. 197, fn. 3.)

The matter of overlapping coverage of homeowner's and automobile liability policies was directly addressed by our Supreme Court in *State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d 94. There, State Farm had issued to an insured both an automobile policy and a homeowner's policy with greater limits. The coverage and exclusions of the homeowner's policy were essentially the same as those in the St. Paul policy which is at issue here. The insured, a hunting enthusiast, had negligently filed the trigger mechanism of a .357 Magnum pistol, which, sportsman that he was, he used to shoot jackrabbits from his car at night in the glare of the car's headlights. While engaged in destroying his dangerous prey, the insured drove his car off the road to keep a rabbit within the lights. Bumping motion of the car caused the pistol to discharge, causing injury to a passenger who sued for personal injuries.

The court held that the injury was covered by both the automobile and homeowner's policies of the driver. It reasoned: "[A]lthough the accident occurred in a vehicle, the insured's negligent modification of the gun suffices, in itself, to render him fully liable for the resulting injuries. Under these facts the damages to [the victim] are, under the language of

the homeowner's coverage clause, 'sums which the Insured . . . [became] legally obligated to pay' because of the negligent filing of the trigger mechanism; inasmuch as the liability of the insured arises from his non-auto-related conduct, and exists independently of any 'use' of his car, we believe the homeowner's policy covers that liability. [¶] A hypothetical may serve to explain further our conclusion in this regard. If, after negligently modifying the gun, Partridge had lent it to a friend who had then driven his own insured car negligently, resulting in the firing of the gun and injuring of a passenger, both Partridge and his friend under traditional joint tortfeasor principles would be liable for the injury. In such circumstances, Partridge's personal liability would surely be covered by his homeowner's policy, and his friend's liability would be covered by automobile insurance." (10 Cal.3d at p. 103.)

In the case at bench, the damages to Ignacio and Antonia Gonzalez are, under the language of the homeowner's coverage clause, sums which the insured became legally obligated to pay because of the insured's negligent maintenance of the brakes of his car, a negligent act occurring on the premises of the insured. That liability arose independently of the use of the car by the insured. If Martinez, the insured, had on his premises negligently and gratuitously repaired the brakes of the car of a friend who subsequently injured a third person by reason of driving the car with defective brakes, both Martinez and the friend would be liable as joint tortfeasors for the injury. "In such circumstances, [Martinez'] personal liability would surely be covered by his homeowner's policy. . . ." (10 Cal.3d at p. 103.)

St. Paul seeks to avoid the inevitable conclusion flowing from *Partridge* by focusing upon language in that opinion distinguishing between "auto-related" and "non-auto-related" conduct. (See 10 Cal.3d at pp. 96, 103, 106.) The language, however, is used in the context of distinction between types of insurance and not generically. ■ The import of the words used is that an accident covered by an automobile policy may nevertheless be covered by a homeowner's policy if concurrent causes of the injury arise from conduct insured by both.

■ Finally, St. Paul seeks to avoid liability, contending that no demand was made upon it by its insured to defend the first action so that the claim of the insured assigned to plaintiffs is flawed. Leaving aside the proposition that St. Paul had notice of the pending wrongful death action and therefore an opportunity to defend it if it chose, the contention focuses on an irrelevant fact. Once the claim of plaintiffs against

Martinez was reduced to judgment, they possessed an independent cause of action against St. Paul. (Ins. Code, § 11580; 4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 759.)

The judgment is reversed.

Lillie, Acting P. J., and Hanson, J., concurred.