607 P.2d 1173

The **HERTZ CORPORATION,**
**Plaintiff-Appellee,**

**and**

**Nancy Bradshaw, Plaintiff in Intervention-Appellee,**

v.

**Tilman H. ASHBAUGH, Defendant and Third Party Plaintiff-Appellee,**

v.

**FOUNDATION RESERVE INSURANCE CO., INC., Third Party Defendant-Appellant.**

**No. 3987.**

Court of Appeals of New Mexico.

Feb. 5, 1980.

Writ of Certiorari Denied Feb. 26, 1980.

Juan G. Burciaga, Ussery, Burciaga & Parrish, Albuquerque, for third party defendant-appellant.

James M. Kennedy, Coors, Singer & Stratton, P. A., Albuquerque, for appellee.

## OPINION

WALTERS, Judge.

The trial court, sitting without a jury, found that Foundation Reserve Insurance Company issued a liability insurance policy to "Tilman H. Ashbaugh dba Corky's Wrecker Service" which covered a temporary substitute automobile owned by Tilman H. Ashbaugh individually. Ashbaugh, while on business for the Wrecker Service and while driving the substitute automobile because one of the company's wreckers was inoperative, was involved in an accident. The court concluded that Foundation Reserve was required under the company policy to afford protection, defense and coverage in connection with Hertz and Bradshaw's suit against Ashbaugh. Foundation argues on appeal that Ashbaugh's vehicle does not qualify as a substitute vehicle and the court was in error in imposing coverage.

We note at the outset that the rules of appellate review require us to sustain the court's findings and conclusions if supported by the evidence. *Montoya v. Travelers Ins. Co.*, 91 N.M. 667, 579 P.2d 793 (1978).

The provisions of the policy which Foundation says relieve it of coverage and which are embodied in Foundation's Requested Findings 12 and 13, are as follows:

12. That in the provisions of policy number E 602 32, under section B(b) defining "insured motor vehicle", the following language appears:

"Insured motor vehicle" means a motor vehicle: (2) while temporarily used as a substitute for an insured motor vehicle as described in subparagraph (1) above, when withdrawn from normal use because of its breakdown, repair, service, loss or destruction; * * * but the term "insured motor vehicle" shall not include: * * * (iii) under subparagraph (2) and (3) above, a motor vehicle owned by the named insured or by any resident of the same household as such insured; * * *

13. That under section IV of policy number E 602 32, "temporary substitute automobile" is defined as follows:

(3) Temporary substitute automobile-under coverages A, B and division 1 of coverage C, an automobile not owned by the named insured or his spouse or any resident of the same household, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

\* \* \* \* \* \*

The trial court made the following findings with respect to those provisions:

5. Under paragraph IV(a)(3) of such policy, the "named insured" was permitted to use a "temporary substitute" vehi-

cle when either of the "described" vehicles was withdrawn from normal use due to breakdown.

6. At the time of his purchase of such policy, Ashbaugh was informed by the general agent for Foundation Reserve that the policy would "cover" any vehicle temporarily used by Ashbaugh in connection with his business in the event of breakdown of a "described" vehicle (i. e., a vehicle "described" in the policy's declarations).

7. At the time policy went into effect, Foundation Reserve was aware that Ashbaugh was doing business as "Corky's Wrecker Service", and Foundation Reserve intended to insure such business, and not the personal vehicles of Ashbaugh. In this regard, Foundation Reserve expressly limited and restricted the use of the "commercial vehicles in such Policy" to a radius of fifty miles of Santa Fe, New Mexico. An additional intention of both Ashbaugh and Foundation Reserve in the purchase and issuance of the policy was to enable Ashbaugh's business to comply with the insurance requirements of the New Mexico State Corporation Commission.

8. On August 25, 1976, Ashbaugh was required, in connection with his business as Corky's Wrecker Service, to utilize a vehicle in the conduct of such business. He discovered that one of the "described" vehicles was broken down and would not start, and that the other "described" vehicle was on duty, away from his place of business.

9. Upon discovering that he could use neither "described" vehicle, Ashbaugh elected to drive another vehicle, a truck which he had purchased in his own name for resale. The "described" vehicles had been purchased and were titled in the name of "Tilman H. Ashbaugh dba Corky's Wrecker Service."

and the following conclusions:

4. The "named insured" under the Foundation Reserve policy in question was "Tilman H. Ashbaugh dba Corky's Wrecker Service" and not Tilman H. Ashbaugh individually.

5. "Tilman H. Ashbaugh dba Corky's Wrecker Service" is not the same entity, for purposes of construction and application of the policy, as Tilman H. Ashbaugh individually. The parties to the policy intended to and did insure the business known as Corky's Wrecker Service, in the operation of its wrecker vehicles, and did not intend nor did such insurance cover the personal driving or activities of Ashbaugh.

6. Tilman H. Ashbaugh, individually, was not the "named insured" under the policy, and any vehicle owned by Ashbaugh individually was not a vehicle owned by Tilman H. Ashbaugh dba Corky's Wrecker Service, for purposes of application and construction of the insurance policy.

7. The use by Ashbaugh of his privately-owned vehicle not described in the policy, in connection with business purposes of Corky's Wrecker Service, was a use contemplated and insured under paragraph IV(a)(3) of such policy and not excluded by paragraph V(d)(3) or any other exclusionary provision of the policy.

8. In any event, the policy was reformed by the express representations of Foundation Reserve's general agent that "any vehicle" could be utilized as a temporary substitute vehicle in connection with a breakdown of a "described" vehicle, upon which representation and understanding Ashbaugh relied to his detriment. Foundation Reserve is estopped, under these circumstances, from assuming a contrary position and denying coverage to Ashbaugh.

9. The accident of August 25, 1976, occurred while Tilman H. Ashbaugh was doing business as Corky's Wrecker Service, and while Ashbaugh was operating a temporary substitute vehicle not owned or otherwise used by or in connection with such business entity.

We do not consider Finding 6 and Conclusion 8 further because there is no evidence that a general agent made any representations to Ashbaugh. See *Pribble v. Aetna*

*Life Insurance Company*, 84 N.M. 211, 501 P.2d 255 (1972). The other findings, quoted above, are supported by substantial evidence.

The resolution of this appeal rests principally upon the meaning of "named insured" as used in Sections B(b) iii quoted in Foundation's Requested Instruction 12, and Section IV(3) as quoted in its Requested Instruction 13. This phrase, insofar as concerns a solely-owned business, has not previously been construed in New Mexico. Appellant cites several cases which hold that one who takes an insurance policy in a business or trade name is the same entity as he is as an individual, and thus he is a "named insured" for purposes of excluding substitute automobile coverage when he uses another vehicle not used in his business but owned by himself or a relative residing in his household. *See, e. g., Kelly v. Craig*, 263 F.Supp. 570 (W.D.Mo.1967); *Gabrelcik v. National Indem. Co.*, 269 Minn. 445, 131 N.W.2d 534 (1964). In *Samples v. Georgia Mut. Ins. Co.*, 110 Ga.App. 297, 138 S.E.2d 463 (1964), a factual situation converse to that now before us, it was held that an automobile owned in the trade name of plaintiff's husband's business was not an automobile "not owned by the named insured [plaintiff] or his spouse," and therefore was not a substitute automobile under her policy.

The case cited to us by appellee is not on point and, consequently, of no assistance. However, some jurisdictions have refused to extend the meaning of "named insured" beyond the precise person or entity named. Thus, in *Farley v. Amercian Auto. Ins. Co.*, 137 W.Va. 455, 72 S.E.2d 520 (1952), where the insurance policy was issued to "Earl Farley and Harry Wallace" and covered a specific Ford truck, it was held that another truck owned by Wallace and driven by Farley was not owned by the named insured, and was therefore a substitute automobile, because the "named insured" was Farley and Wallace and Farley and Wallace, together, did not own the truck driven by Farley at the time of the accident.

In a case where the facts of use were just the opposite of those here, that is, an individual using as a substitute automobile one owned by a business partnership of which he was a member, it was held that the policy issued to him as an individual and insuring his personally owned vehicle covered the partnership vehicle when used as a substitute, because the substitute vehicle was one owned by a partnership and not by the "named insured," an individual. *St. Paul-Mercury Ind. Co., v. Heflin*, 137 F.Supp. 520 (W.D.Ark.1956).

It is not unreasonable to construe "named insured" to mean Corky's Wrecker Service only, and not to include Tilman H. Ashbaugh individually. We feel as the Michigan court did in *Sentry Security Systems, Inc. v. Detroit Auto. Inter-Ins. Exch.*, 394 Mich. 96, 228 N.W.2d 779 (1975), that the language of Foundation's policy obviously was "not designed to be used to insure a business" but, nevertheless, that is what the company "surely did."

■ Finding 7 is to the effect that Foundation Reserve intended to insure Ashbaugh's business of providing wrecker service and intended that the policy enable Ashbaugh to meet the insurance requirements of the State Corporation Commission. Those requirements, under § 65–2–52, N.M. S.A.1978, included a requirement of liability insurance to cover "negligent operation" in Ashbaugh's wrecker service business. This finding supports Conclusions 4, 5, 6 and 7, quoted above. The meaning of "named insured" was ambiguous; the trial court could properly construe the policy to give effect to the intent of the parties. *Cain v. National Old Line Insurance Company*, 85 N.M. 697, 516 P.2d 668 (1973). The intent being dispositive of this appeal, we need not choose between the conflicting approaches identified above.

The judgment is affirmed.

WOOD, C. J., concurs.

SUTIN, J. (specially concurring).

SUTIN, Judge (specially concurring).

I specially concur.

Foundation Reserve says:

[T]he only issue before this Court is an issue of law, namely, whether the 1972 Ford pick-up, not described under the policy, but owned by Ashbaugh, was a "non-owned" vehicle because of the policy having been issued to Ashbaugh in the name of "Tilman H. Ashbaugh, d/b/a Corky's Wrecker Service." * * *

The 1972 Ford was not a pick-up. It was a half-ton truck with a flat bed.

The answer to the issue is: The 1972 Ford half-ton pick-up was a "non-owned" vehicle because Foundation Reserve foisted upon "Corky's Wrecker Service" a "Basic Automobile Policy" instead of a "Basic Commercial policy."

"Corky's Wrecker Service" was a commercial enterprise. The insurance policy insured two trucks described as 1973 and 1963 Dodge Wreckers with Holmes Wrecker Equipment installed on them to perform the services necessary in the wrecker business. Nonetheless, Foundation Reserve issued a policy that falls within what is commonly entitled "Family Automobile Policy." Such a policy does not include a flat bed truck. *Weed v. Ohio Farmers Ins. Co.*, 53 Ill.App.3d 826, 11 Ill.Dec. 564, 368 N.E.2d 1310 (1977).

Under paragraph B. Definitions (Coverage J)

(a) "Insured" means:

(1) the named insured as stated in the policy *and, while residents of the same household, the spouse of any such named insured and relatives of either* ;

&ast; &ast; &ast; &ast; &ast; &ast;

(b) "Insured Motor Vehicle" means a motor vehicle;

&ast; &ast; &ast; &ast; &ast; &ast;

(2) while temporarily used as a substitute for an insured motor vehicle *as described in subparagraph (1)* above, when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

&ast; &ast; &ast; &ast; &ast; &ast;

but the term "Insured Motor Vehicle" shall not include:

&ast; &ast; &ast; &ast; &ast; &ast;

(iii) under subparagraph (2) * * * above, a motor vehicle owned by the named insured or by any resident of the same household as such insured; * * * [All emphasis added.]

Again, hidden far down the long provisions of the policy in small letters with innumerable paragraphs of language difficult to read and understand, we find:

IV OTHER DEFINITIONS.

(a) *Automobile.* Except with respect to division 2 of the coverage C and except where stated to the contrary, the word "*automobile* " means:

(1) Described *Automobile* —the motor vehicle or trailer described in this policy.

&ast; &ast; &ast; &ast; &ast; &ast;

(3) Temporary Substitute *Automobile* —under coverage A, B, and division 1 of coverage C, *an automobile not owned by the named insured or his spouse or any resident of the same household* while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction. [All emphasis added.]

Foundation Reserve knew that the only or primary purpose of the policy was to insure "Corky's Wrecker Service," a commercial enterprise. Yet Item 6 of the Daily Report form, where all "Named Insured's Declarations" are set forth reads:

*The automobile(s) will be used for pleasure and family business only and will not be used commercially*, except as follows: WRECKER SERVICE. SEE LIMITATION OF USE ENDORSEMENT FORM 21 (11–75) ATTACHED. [Emphasis added.]

This endorsement *limited use of the wreckers* within a 50 mile radius from Santa Fe, New Mexico.

Ashbaugh owned automobiles which were insured under policies issued by different insurance companies. The 1972 half-ton

truck with a flat bed was "owned" by Ashbaugh, and at the time of the accident was used in Ashbaugh's commercial enterprises as "Corky's Wrecker Service." It was not used for pleasure or family business.

The question for decision is: Are the "Coverage Definitions" and "Other Definitions," *supra*, applicable to a wrecker owned by Ashbaugh and used by "Corky's Wrecker Service"? The answer is "No."

The insurance policy recognized two distinct entities for different insured vehicles: (1) *Automobiles* owned and used for pleasure and family business by Ashbaugh and his family, and (2) *Trucks* used in the "Wrecker Service." It was never contemplated or understood that the automobile provisions would be applied to the commercial enterprise. At the time the insurance was obtained, Foundation Reserve's agent told Ashbaugh that "the coverage would be afforded on another vehicle if one of the wreckers wasn't available for emergency use." This fact was Ashbaugh's understanding because the agent knew that the policy had to cover the necessary insurance required by the State Corporation Commission. The agent did not explain whether the substitute vehicle should be owned or non-owned by "Corky's Wrecker Service."

Judge Baca's comments pierced the position taken by Foundation Reserve, comments that fairly and realistically explain the basis of his decision. He said:

> * * * I think, complicating the situation here, is that Foundation Reserve has attached a set of provisos to the contract that may be better attached *to a policy of insurance covering an automobile that was to be used for family purposes rather than for business purposes* * * * *I think here what has arisen is a business contract.* * * * Is there an ambiguity in the words here? Well, perhaps there's not an ambiguity in the words here, but *there is certainly an ambiguity in its interpretation.* * * * [Emphasis added.]

Foundation Reserve cannot plead ignorance of the law or lack of knowledge of rules applicable to insurance contracts. It knows the difference between a family automobile policy and a commercial policy. It has presented many legal problems heretofore in the appellate courts of New Mexico and the Tenth Circuit of the United States.

See, *Foundation Reserve Insurance Company v. Faust*, 71 N.M. 271, 377 P.2d 681 (1962); *Armijo v. Foundation Reserve Insurance Company*, 75 N.M. 592, 408 P.2d 750 (1965); *Anaya v. Foundation Reserve Insurance Company*, 76 N.M. 334, 414 P.2d 848 (1966) (an unfair restriction); *Foundation Reserve Insurance Co. v. McCarthy*, 77 N.M. 118, 419 P.2d 963 (1966) (unfair position taken on "being struck by automobile"); *Foundation Reserve Ins. Co. v. Johnston Testers, Inc.*, 77 N.M. 207, 421 P.2d 123 (1966); *Modisette v. Foundation Reserve Insurance Co.*, 77 N.M. 661, 427 P.2d 21 (1967) directly contra, *Tsosie v. Foundation Reserve Insurance Company*, 77 N.M. 671, 427 P.2d 29 (1967) (both seeking to deny coverage); *State Farm Mut. Auto. Ins. Co. v. Foundation R. Ins. Co.*, 78 N.M. 359, 431 P.2d 737 (1967); *Foundation Reserve Insurance Co. v. Kennedy*, 79 N.M. 382, 444 P.2d 293 (1968); *Foundation Reserve Ins. Co. v. Martin*, 79 N.M. 737, 449 P.2d 339 (Ct.App. 1968); *Universal C. I. T. Corp. v. Foundation Reserve Ins. Co.*, 79 N.M. 785, 450 P.2d 194 (1969); *Fierro v. Foundation Reserve Insurance Company*, 81 N.M. 225, 465 P.2d 282 (1970); *Homestead Invest. Inc. v. Foundation Reserve Ins. Co.*, 83 N.M. 242, 490 P.2d 959 (1971); *C & H Constr. & Pav., Inc. v. Foundation Reserve Ins. Co.*, 85 N.M. 374, 512 P.2d 947 (1973); *Foundation Reserve Insurance Company v. Kelly*, 388 F.2d 528 (10th Cir. 1968).

My views on this subject matter were expressed in *Read v. Western Farm Bur. Mut. Ins. Co.*, 90 N.M. 369, 563 P.2d 1162 (Ct.App.1977); *Sandoval v. Valdez*, 91 N.M. 705, 580 P.2d 131 (Ct.App.1978), Sutin, J., concurring; *Thompson v. Occidental Life Ins. Co. of Cal.*, 90 N.M. 620, 567 P.2d 62 (Ct.App.1977), Sutin, J., concurring and dissenting.

Foundation Reserve's insurance policy has, apart from many other provisions, 24

exclusions, 28 conditions, 5 coverage exclusions and 12 conditions of coverage. No insured, except one trained in insurance law or experienced in the insurance business can read and understand the complex, complicated and intricate provisions of this insurance policy written in words of fine print that ambles along the way. An insured must rely upon the representations of a sales agent. The insurer prepares the policy. Its sales agent is schooled in the art of salesmanship. A word, a phrase, or a provision in a contract of insurance is not what the insurer intended the language to mean, but what a reasonable person in the position of the insured would have understood them to mean.

Public policy demands that when an insurance policy is issued to a person or business, the contents thereof must be stated as at least one insurance company wrote:

> We have written this policy in clear everyday English. We have also provided step-by-step instructions to make it easy for you to find out if a loss is covered. If you have any questions call your agent or broker. They will be glad to help you. [And then follows a clear explanation in everyday English.]

If necessary, public policy demands that an insurance agent explain in writing the complex, complicated and intricate provisions of an insurance policy applicable to a family or a business. The public needs this protection. An insurance company must give protection. The tortuosity of the insurance policy of yesterday should not be acceptable in courts of law today. Our duty is to liberally construe this insurance policy in favor of the insured and strictly against the insurer where the coverage and the language used is ambiguous. It has a double meaning by inserting family insurance into commercial insurance. Its meaning is doubtful. I agree that judgment should be affirmed.