[No. B059029. Second Dist., Div. Four. Apr. 21, 1993.]

VALERIE GURROLA et al., Plaintiffs and Appellants, v.
GREAT SOUTHWEST INSURANCE COMPANY, Defendant and
Respondent.

**COUNSEL**

Shernoff, Bidart & Darras, Michael J. Bidart and Sharon J. Arkin for Plaintiffs and Appellants.

Engstrom, Lipscomb & Lack, Brian J. Heffernan, Wayne S. Kreger and Jeffrey T. Bolson for Defendant and Respondent.

## OPINION

**SOVEN, J.\***—Plaintiffs appeal from a judgment after a court trial in favor of defendant Great Southwest Insurance Company. The sole issue is whether a third party claim, resulting from an auto accident, is covered under a business liability policy which purports to exclude coverage for automobile-related losses. We conclude that the policy does not provide coverage for the losses in this case, and we affirm the trial court.

### FACTS

The facts are based on a stipulation of the parties and are undisputed. Defendant's insured, Wilcox, owned a welding business which was insured by defendant. In his spare time, Wilcox rebuilt cars. He owned and rebuilt a 1934 Bantam Coupe, including welding the chassis to the frame of the vehicle. In October 1984, Wilcox, with plaintiff's decedent Hayes as a passenger, drove the vehicle at speeds exceeding 90 miles per hour. The vehicle crossed the center line of the road and struck a vehicle operated by plaintiff Gurrola, who was seriously injured. Both Wilcox and Hayes were killed in the accident. The accident was caused by Wilcox's negligent operation of the vehicle and negligent reconstruction of the vehicle, including the welding. Both Hayes's survivors and Gurrola sued the Wilcox estate.

Defendant insured Wilcox's welding business under a comprehensive general liability policy. Wilcox was the named insured. The policy provided as relevant: "This insurance does not apply . . . [to injury or damage] arising out of the ownership, maintenance, operation, use, . . . of . . . any automobile . . . owned or operated by . . . any insured . . . ."

### DISCUSSION

 The simple issue in this case is, as noted, whether the business liability policy issued by defendant covers the injuries and damage resulting from the auto accident, notwithstanding the apparently clear exclusion of injury or damage arising out of the ownership, maintenance, operation or use of any automobile. Plaintiffs' theory is that because the accident was caused both by the negligent operation of the vehicle and the negligent welding of the vehicle, the injuries and damages are covered under Wilcox's welding business policy. The theory is without merit, and has been rejected by nearly every Court of Appeal which has ruled on the issue.

Plaintiffs rely on *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123]. In *Partridge*, the insured under

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.

a homeowners policy was a hunting enthusiast who had filed the trigger mechanism of his handgun so that the weapon had a hair-trigger action. The insured and his friends were hunting by shooting from the windows of the insured's vehicle. The insured hit a bump and the weapon discharged, hitting one of his friends, who, as a result, was paralyzed. (10 Cal.3d at pp. 97-98.) Although the insured's homeowners policy contained an exclusion for injuries arising out of the use of a motor vehicle, the court held that the policy provided coverage for the injuries sustained. The court found that "although the accident occurred in a vehicle, the insured's negligent modification of the gun suffices, in itself, to render him fully liable for the resulting injuries. . . . [I]nasmuch as the liability of the insured arises from his non-auto-related conduct, and exists independently of any 'use' of his car, we believe the homeowner's policy covers that liability." (*Id.*, at p. 103.)

In *State Farm Fire & Cas. Co.* v. *Camara* (1976) 63 Cal.App.3d 48 [133 Cal.Rptr. 600], *Partridge* was distinguished based on facts that are effectively identical to those involved in our case. In *Camara*, the insured under a homeowners policy with an auto use exclusionary clause, was driving a dune buggy when a "collision" occurred causing injuries to the plaintiff passenger. The plaintiff alleged that the insured had negligently designed, constructed and assembled the vehicle so as to " 'proximately cause the vehicle to overturn.' " (*Id.* at p. 50.) The court held that under *Partridge*, "the nonvehicle-related cause must be independent of the vehicle-related cause in order for the liability to be covered" by the homeowners policy (*id.*, at pp. 54-55) and found no coverage under that policy. The *Camara* court pointed out that "the *only* way in which plaintiff could have been exposed to the claimed design risk was through the operation or use of the motor vehicle." (*Id.*, at p. 55.) In this case, too, the only way that plaintiff or the decedent could have been exposed to the risk of the negligent welding was through the operation or use of the motor vehicle.

■ We are aware of no case after *Camara* which has not applied the principle that a homeowners policy provides no coverage for auto-related accidents unless there are " 'two negligent acts or omissions of the insured, one of which, *independently of the excluded cause*, renders the insured liable for the resulting injuries. [Citations.]' " (*National American Ins. Co.* v. *Coburn* (1989) 209 Cal.App.3d 914, 919 [257 Cal.Rptr. 591], and see discussion therein.)[1]

Plaintiffs, however, rely on *Gonzalez* v. *St. Paul Mercury Ins. Co.* (1976) 60 Cal.App.3d 675 [131 Cal.Rptr. 626], in which coverage was found under

---

[1]Plaintiffs do *not* contend that a different result should obtain because this policy is a business liability policy.

a homeowners policy with an auto use exclusionary clause, based on the facts that the insured negligently repaired the brakes, "a negligent act occurring on the premises of the insured," and that the insured was involved in an accident injuring a third party while driving the vehicle. (*Id.* at p. 680.)

We agree, however, with *Camara* and cases following that the liability must arise from nonvehicular conduct and must exist independently of the use or ownership of the vehicle: "We can only observe that the *St. Paul Mercury* court has fallen into the same error as the *Pacific Employers* [*Ins. Co.* v. *Maryland Casualty Co.* (1966) 65 Cal.2d 318 (54 Cal.Rptr. 385, 419 P.2d 641)] court. A hundred similar cases can be conceived. Today the defendant-owner negligently repairs the brakes; tomorrow he carelessly leaves worn tires on the vehicle (which later result in a blowout) or he fails to apply the hand brake when parked on a hill (as a result of which it rolls uncontrolled down the hill). . . . Injury from any such acts unquestionably arises out of the ownership, maintenance, operation, use, etc. of the vehicle, yet under the *St. Paul Mercury* holding it is still covered when the homeowner's policy"—here, business liability policy—"clearly says it is not." (*State Farm Fire & Cas. Co.* v. *Camara, supra,* 63 Cal.App.3d at p. 55.)

Plaintiffs, recognizing the uphill battle, rely on *Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395 [257 Cal.Rptr. 292, 770 P.2d 704], for language which, plaintiffs contend, bolsters their position that *Partridge* does not say what it said and that *Camara* and cases following are simply wrong. *Garvey* cannot rationally be read to support plaintiffs' hopes. First, *Garvey* had nothing to do with a third party claim; rather *Garvey* held that the dual causation concept, allowed in *Partridge* in third party claims, does not apply in first party claims. (*Garvey* v. *State Farm Fire & Casualty Co., supra,* 48 Cal.3d at pp. 406-408.) Second, the language quoted by plaintiffs from *Garvey* about the intended meaning of *Partridge* as applied to third party claims is too remote from the issues facing the court in *Garvey* to be read as a reinterpretation of *Partridge,* particularly in light of the disclaimer also quoted by plaintiff.[2]

---

[2]We quote some of plaintiffs' quote: "In analyzing the liability coverage [in *Partridge*], we explicitly recognized, the efficient cause language [of *Sabella*] is not very helpful, for here both causes were independent of each other: the filing of the trigger did not cause the careless driving, nor vice versa. Both, however, caused the injury. . . . We concluded by stating, Although there may be some question whether either of the two causes in the instant case can be properly characterized as *the* prime, moving or efficient cause of the accident we believe that coverage under a liability insurance policy is equally available to an insured whenever an insured risk constitutes simply a concurrent proximate cause of the injuries." (See 48 Cal.3d at p. 405.)

"Although the Court of Appeal refused to confine the application of *Partridge* to liability cases, the court did attempt to limit the scope of *Partridge*'s concurrent causation standard in both liability and property cases by requiring the included and excluded perils to be

Finally, plaintiffs contend that the insured's negligent welding of the vehicle is not an excluded risk because the welding involved "reconstruction" and not "maintenance." Plaintiffs' point is not clear; the exclusionary clause, as discussed, excludes injury arising out of the ownership, maintenance, operation or use of the vehicle.

DISPOSITION

The judgment is affirmed.

Epstein, Acting P. J., and Vogel (C. S.), J., concurred.

Appellants' petition for review by the Supreme Court was denied July 15, 1993. Mosk, J., was of the opinion that the petition should be granted.

---

independent of origin *and* independent in operation. Specifically, the Court of Appeal interpreted *Partridge, supra*, 10 Cal.3d 94, as holding that because each act could have caused the loss regardless of the existence of the other act [citation], they were independent of each other. According to the Court of Appeal: Neither [cause in *Partridge*] can be said to have necessarily acted upon a condition created by the other, or to have propelled the other, or to have brought to fruition the potential for damage inherent in the other. The Court of Appeal believed the *Partridge* court would not have found the covered risk to be independent if that risk (negligence) existed only in relation to, [or was dependent on] an excluded risk. Thus, the Court of Appeal determined that in order for coverage to be found under *Partridge*, the concurrent event *alone* must have been a sufficient condition of the loss—i.e., capable of producing damage itself." (See 48 Cal.3d at p. 409.)

"The term 'sufficient condition' as used by the Court of Appeal *misapplied the Partridge holding* because it implied that negligent driving alone could have caused plaintiff's injury in that case. Although we point out the court's analytical error for purposes of clarifying any confusion the term may have caused, we leave the application of *Partridge* in the liability context to a future liability case that raises the concurrent causation issue." (See 48 Cal.3d at p. 409, fn. 8, italics added.)