42 Cal.App.4th 1194 (1996)
50 Cal. Rptr.2d 192
PROVIDENCE WASHINGTON INSURANCE COMPANY, Plaintiff and Appellant,
v.
VALLEY FORGE INSURANCE COMPANY et al., Defendants and Respondents.
Docket No. A070009.
Court of Appeals of California, First District, Division One.
February 26, 1996.
*1197 COUNSEL
Wilson, Elser, Moskowitz, Edelman & Dicker, Martin W. Johnson and Ronald F. Berestka for Plaintiff and Appellant.
Larson & Burnham, James L. Wraith and Anne Cobbledick Gritzer for Defendants and Respondents.
OPINION
STRANKMAN, P.J.
An insurance company sued other insurance companies to recover contribution on the settlement of third party claims. The third parties had been injured when their rental van's tire blew out, overturning the van on the freeway, and they claimed that the van's owner negligently maintained and rented the van. The van was registered to a sole proprietorship rental agency and had received regular maintenance at service stations owned by the same sole proprietor. Plaintiff insurance company defended the sole proprietor under a business automobile liability policy issued in his rental agency's trade name, and then sued other insurers for contribution. Defendants denied coverage under commercial general liability and garage operations policies issued to the proprietor, doing business as the service stations. On defendants' motion for summary judgment, the trial court found that the underlying bodily injuries arose out of the rental van's use and were therefore excluded from coverage by policy exclusions of damages arising out of the use of autos, or rented autos, owned by the insured. The trial court rejected plaintiff's argument that the van's owner was the rental car agency and the insured the service station enterprise, finding instead that the van was owned by the insured, the individual proprietor. We affirm the judgment.

*1198 I. FACTS
In November 1988, nine Nigerian musicians were traveling in a rented van to a Southern California engagement when a tire exploded, sending the van out of control. The van overturned on the freeway, injuring the driver and passengers. Personal injury lawsuits were filed the next year upon claims that the van's owner negligently maintained and rented the van. At least one of the lawsuits charged that the owner knew the tire had been leaking air and inadequately patched the problem with "stop leak." An investigating police officer said the tire blowout was caused by low air pressure heating and detaching the tread, and the officer found evidence of an emergency sealant like "stop leak" inside the tire.
The van was owned by sole proprietor Paul Hifai, doing business as A-1 Rent-A-Car, an agency which operated 95 vehicles. Hifai also individually owned two gasoline service stations, doing business as Tennyson Mobil Service. The A-1 Rent-A-Car vehicles were routinely serviced by the Mobil stations, and the rental van was serviced at one of those stations just days before the freeway accident.
Appellant Providence Washington Insurance Company (Providence) had issued business automobile and rental excess liability insurance policies to Hifai, under his trade name A-1 Rent-A-Car. The business auto policy covered bodily injury caused by an accident resulting from automobile ownership, maintenance or use. Providence defended Hifai in the underlying personal injury actions and settled them in 1992, at a cost of almost $1.2 million. Hifai had tendered the underlying actions to other insurers as well, but they had denied coverage.
Providence then instituted this action in 1993, seeking contribution from Hifai's other insurers. Respondent Valley Forge Insurance Company (Valley Forge) had issued a commercial general liability policy to Hifai, doing business as Tennyson Mobil Service. Respondent Transportation Insurance Company (Transportation) had issued a garage operations policy to Hifai, doing business as Tennyson Mobil Service. Valley Forge's policy generally covers bodily injury caused by an accident and Transportation's policy has the same general coverage, if the injury results from "garage operations." But respondents' policies limit coverage for an insured's "owned-autos." The Valley Forge policy excludes coverage for bodily injury "arising out of the ownership, maintenance, [or] use" of any auto owned by any insured. The Transportation policy excludes coverage for bodily injury arising out of "an auto owned or sublet by an insured while rented, leased or loaned to another." (Italics omitted.)
*1199 The trial court granted summary judgment to Valley Forge and Transportation on the following logic: (1) the policies do not cover bodily injury arising out of an insured's "owned-autos," or "owned-autos" while rented to another, (2) the policies' insured is Hifai, (3) Hifai owned the rental van causing bodily injury, (4) therefore the policies do not cover the bodily injuries from the van accident compensated in the underlying litigation. Providence appealed and contests the second and third premises, claiming that the business enterprise of Tennyson Mobil Service is the insured, not Hifai, and that the accident did not solely arise out of the use of the van but was independently caused by negligent garage repairs.

II. DISCUSSION
(1) We determine de novo whether there is a genuine issue of material fact and the moving parties were entitled to summary judgment as a matter of law. (Jambazian v. Borden (1994) 25 Cal. App.4th 836, 844 [30 Cal. Rptr.2d 768].) Here, the dispositive facts are undisputed and our review focuses on the legal significance of those facts. Similar legal issues are presented by both disputed policies, but there are differences between the policies' particular coverage and exclusion provisions that require separate discussions.

A. The Valley Forge policy does not cover the underlying bodily injuries

The Valley Forge commercial general liability policy lists the named insured as "Paul Hifai DBA: Tennyson Mobil Service." The policy generally covers bodily injury caused by an accident but excludes coverage for bodily injury "arising out of the ownership, maintenance, [or] use" of any auto owned by any insured. Appellant Providence argues that the van was not owned by the insured and that the bodily injuries suffered by the van occupants did not "arise out of" the ownership, maintenance or use of the van.

1. The van was owned by Hifai, individually, and Hifai is the insured

(2) The issue of the van's ownership is easily settled. Providence acknowledges that the van was registered to A-1 Rent-A-Car, a business owned by Hifai as a sole proprietorship. Inescapably, Hifai is the owner of the van. Providence's contention that A-1 Rent-A-Car is the owner is untenable because that business has no existence apart from Hifai. "A sole proprietorship is not a legal entity itself. Rather, the term refers to a natural person who directly owns the business...." (Friedman, Cal. Practice Guide: Corporations 1 (The Rutter Group 1995) ¶ 2:3, p. 2-1.) An auto *1200 registered in a sole proprietor's trade name is owned by the sole proprietor. (Gabrelcik v. National Indemnity Company (1964) 269 Minn. 445 [131 N.W.2d 534, 535-537] [auto registered in insured's spouse's trade name was owned by the spouse, and therefore not covered by an auto liability policy covering substitute auto not owned by the insured or her spouse].)
The remaining question is whether Hifai is the insured. The insured is listed in the policies as "Paul Hifai" and the next line states "DBA: Tennyson Mobil Service." Providence claims that the insured is Tennyson Mobil Service, rather than Hifai individually. But, as we have just stated, a sole proprietorship like Tennyson Mobil Service is not a legal entity. An "insured" must be a legal "person," such as an individual, partnership, or corporation. (Ins. Code, § 151.) The designation "dba" or "doing business as" simply indicates that Hifai operates his sole proprietorship under a fictitious business name. (See Bus. & Prof. Code, § 17900 et seq. [regulating fictitious business names].) "The designation `d/b/a' means `doing business as' but is merely descriptive of the person or corporation who does business under some other name. Doing business under another name does not create an entity distinct from the person operating the business." (Duval v. Midwest Auto City, Inc. (D.Neb. 1977) 425 F. Supp. 1381, 1387, affd. (8th Cir.1978) 578 F.2d 721.) The business name is a fiction, and so too is any implication that the business is a legal entity separate from its owner. Here, our conclusion that Hifai individually, and not his business, is the insured is supported by the identification of the insured's status, in both policies, as an individual. Accordingly, Hifai is the insured and the van he owned is subject to the policy exclusion.
A number of courts in other states have reached similar conclusions. The Colorado Court of Appeal recently held that a personal automobile liability policy covering "non-owned" autos used with the owner's permission did not cover an individual's use of an auto titled in the individual's business name. (Allstate Ins. Co. v. Willison (Colo.Ct.App. 1994) 885 P.2d 342, 343-344.) In Willison, the insured was in an accident while driving a motor home titled to "Bill's Service and RV Center," the insured's sole proprietorship. (Id. at p. 343.) The court recognized that a sole proprietorship is not a distinct entity, and rejected the claim that the motor home was owned by the business itself, and not the individual insured. (Id. at p. 344; accord, Kelly v. Craig (W.D.Mo. 1967) 263 F. Supp. 570, 570-572 [auto liability policy covering nonowned substitute autos for the named insured "`Dorothy Craig DBA Ace Cab Co.'" did not cover a substitute auto owned by Craig].)
The North Dakota Supreme Court has also recognized that "[a] sole proprietorship which is conducted under a trade name is not a separate legal *1201 entity." (Carlson v. Doekson Gross, Inc. (N.D. 1985) 372 N.W.2d 902, 905.) In Carlson, the named insured on comprehensive general liability and excess policies was "`Edwin O. Carlson dba Aero Block & Cement Company and Carlson Trucking.'" (Id. at p. 904.) The court held that coverage was not limited to Edwin Carlson's operations under those business names, but extended to Carlson's farm where an employee was injured. (Id. at pp. 904-907.) The designation "doing business as" following the individual's name did not alter the risks undertaken  the individual was the insured. (Id. at p. 906.)
Many courts have likewise determined that the individual, not the enterprise, is the insured under policies listing the insured by a trade name or as a "dba." The named insured under a commercial auto liability policy, "Coe Management Company," was equated with the individual conducting business under that trade name and the policy found to cover the individual's household member killed by an uninsured motorist. (O'Hanlon v. Hartford Acc. & Indem. Co. (3d Cir.1981) 639 F.2d 1019, 1020-1021, 1023-1025; accord, Purcell v. Allstate Ins. Co. (1983) 168 Ga. App. 863 [310 S.E.2d 530, 531-533] [business auto liability policy naming "Purcell Radiator Serv." as the insured applied to individual operating under that trade name and, by extension, to his family member injured by an uninsured motorist].) Similarly, an individual's personal auto liability policy and a business auto policy insuring the individual "d/b/a Crest Hill Florists," a sole proprietorship, was found to be the same insured on both policies, preventing the stacking of the policy limits. (Georgantas v. Country Mut. Ins. Co. (1991) 212 Ill. App.3d 1 [156 Ill.Dec. 394, 570 N.E.2d 870, 871-873]; see Chmielewski v. Aetna Cas. and Sur. Co. (1991) 218 Conn. 649 [591 A.2d 101, 113] [stating, in a stacking case, that "one who operates a business under a trade name is nonetheless an individual insured under a policy issued in that trade name"].)
In short, it is commonly held that "[a]n individual who does business under several different names, and whose insurance policies are written out to the individual doing business under certain trade names, is not a separate entity in his capacity in operating each of such businesses, but rather there is only one legal entity, the individual, for the purposes of insurance coverage." (46 C.J.S. (rev. 1993) Insurance, § 948, p. 300.)
However, not all courts agree that the individual, not the enterprise, is the insured under policies listing the insured by a trade name or as a "dba." The New Mexico Court of Appeal held that an auto liability policy issued to "`Tilman H. Ashbaugh dba Corky's Wrecker Service'" covering temporary substitute autos "not owned by the named insured" covered an auto owned *1202 by Ashbaugh individually. (Hertz Corp. v. Ashbaugh (1980) 94 N.M. 155 [607 P.2d 1173, 1174-1176].) The court found "named insured" to be ambiguous and looked to the parties' intention to insure the business alone. (Id. at p. 1176.) The Louisiana Court of Appeal likewise held that an insured named as a "dba" was not synonymous with the individual operating the business, but did so upon different reasoning. The Louisiana court found no ambiguity in a business liability policy issued to "`LANDRY, LERSEY DBA LANDRY'S APARTMENTS'" and quickly concluded that it did not cover losses arising from Landry's operation of a carpentry business. (Consolidated American Ins. Co. v. Landry (La. Ct. App. 1988) 525 So.2d 567, 567-569.) The court found the designation "`DBA LANDRY'S APARTMENTS'" to be a "limiting phrase" in the naming of the insured. (Id. at p. 568.)
We are not persuaded by Ashbaugh and Landry. Unlike Ashbaugh, we discern no ambiguity in the listing of the named insured. The insured is the individual, and the "dba" designation simply means that the individual operates under a fictitious name. Ashbaugh is inattentive to the force of the principle that a trade name does not create a separate entity and wrongly relies on cases finding individual partners distinct from the insured partnership. (Hertz Corp. v. Ashbaugh, supra, 607 P.2d at p. 1176.) Such cases are not analogous, since a partnership is a legal entity, often deemed separate from the individual partners, but a sole proprietorship is not separate from its individual owner. (See Bartlome v. State Farm Fire & Casualty Co. (1989) 208 Cal. App.3d 1235, 1242 [256 Cal. Rptr. 719] [property owned by a partnership is not owned by insured individual partner].)
Landry's error lies in construing the "dba" designation as a "limiting phrase" restricting the meaning of the named insured. (Consolidated American Ins. Co. v. Landry, supra, 525 So.2d at p. 568.) We agree with the Carlson court that such a limitation cannot be fairly read in the designation of an individual as a "dba," although coverage limited to certain business operations could be the subject of specific exclusions or endorsements. (Carlson v. Doekson Gross, Inc., supra, 372 N.W.2d at p. 906.) Also, it is not clear that even Louisiana adheres to the reasoning of Landry anymore. The same circuit of the Louisiana Court of Appeal that decided Landry has recently departed from that approach in recognizing that the individual, not the enterprise, is the insured under policies listing the insured as a "dba." The Louisiana court interpreted a policy similar to the one before us and held that a business liability policy issued to "`RICHARD A. SOILEAU DBA THE MEDICINE SHOPPE'" which excluded coverage for bodily injury arising out of the use of an auto owned by the insured did not cover injuries caused by the use of an auto registered to Soileau individually. (Trombley v. Allstate Ins. Co. (La. Ct. App. 1994) 640 So.2d 815, 816-818 [640 So.2d 815].)

*1203 2. The bodily injury in the underlying actions arose out of the ownership, maintenance or use of the van

(3) Anticipating our determination that Hifai is the owner of the van and the insured, appellant Providence presents a secondary argument: the bodily injury in the underlying actions did not solely "arise out of" "the ownership, maintenance, [or] use" of the van. Our Supreme Court has held that an auto exclusion clause such as the one presented here "does not preclude coverage when an accident results from the concurrence of a non-auto-related cause and an auto-related cause." (State Farm Mut. Auto. Ins. Co. v. Partridge (1973) 10 Cal.3d 94, 97 [109 Cal. Rptr. 811, 514 P.2d 123].) In Partridge, the insured negligently filed his pistol's trigger mechanism to create a "hair trigger" and, while hunting jackrabbits off road from his moving truck, hit a bump which discharged one of the pistol's bullets into a passenger. (Id. at pp. 97-98.) The court held that the insured was covered under both his auto liability and homeowners policies, the latter of which contained an auto exclusion similar to the one before us. (Id. at pp. 96-99.) The court found that the accident was "caused jointly by an insured risk (the negligent filing of the trigger mechanism) and by an excluded risk (the negligent driving)." (Id. at p. 102.) "[W]hen two such risks constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy." (Ibid.) The concurrent causes must be independent: the liability of the insured arising from his non-auto-related conduct must exist independently of any use of his car. (Id. at p. 103.)
Here, Providence claims the freeway accident was caused jointly by an insured risk (negligent garage repairs) and by an excluded risk (maintenance or use of the van). Providence has contrived a non-auto-related independent cause where there is none. The proposed insured risk of negligent garage repairs is really nothing more than the excluded risk of the insured's negligent use or maintenance of the van. The negligent use of tire sealant  which is the negligent garage repair alleged here  has been held to fit within the meaning of auto "maintenance" and to be excluded from coverage under an insurance policy with an auto exclusion almost identical to the Valley Forge exclusion. (State Farm Fire & Casualty Co. v. Salas (1990) 222 Cal. App.3d 268, 270-278 [271 Cal. Rptr. 642].)
In Salas, the insured injected a flammable tire sealant into his auto's leaking tire and, when the repair did not work, took the tire to a mechanic for servicing. (State Farm Fire & Casualty Co. v. Salas, supra, 222 Cal. App.3d at pp. 271-272.) The mechanic, unadvised of the earlier repair, started to weld the tire's rim and the tire exploded, injuring him. (Ibid.) The insured *1204 was denied defense and indemnification under his homeowners policy that excluded coverage, as does the policy here, for bodily injuries "arising out of the ownership, maintenance [or] use" of an insured's auto. (Id. at pp. 270-271.) The court held that the insured's attempt to preserve the tire's air pressure with sealant was auto "maintenance" and was therefore excluded from coverage. (Id. at pp. 272-275.) The court rejected the insured's invocation of Partridge, finding that the injuries "arose out of" auto maintenance, rather than the insured's failure to warn the mechanic of the presence of tire sealant. (Salas, supra, at pp. 275-278.) Any failure to warn was "inextricably linked" to the insured's auto maintenance and was not an independent cause of injury. (Id. at p. 278.)
Other courts have likewise concluded that an insured's auto repairs or renovations are auto-related conduct subject to insurance policy auto exclusions, and not conduct independent of an auto's ownership, maintenance or use. (Gurrola v. Great Southwest Ins. Co. (1993) 17 Cal. App.4th 65, 67-70 [21 Cal. Rptr.2d 749]; State Farm Fire & Cas. Co. v. Camara (1976) 63 Cal. App.3d 48, 53-56 [133 Cal. Rptr. 600].) In Camara, the insured designed his Volkswagen into a dune buggy. (63 Cal. App.3d at p. 53.) While driving off road, the insured's passenger was injured when the dune buggy overturned, allegedly because the vehicle was negligently designed, constructed and assembled. (Id. at p. 50.) The court held that the insured's homeowner's policy containing an auto exclusion did not cover the passenger's bodily injuries. (Id. at pp. 53-56.) Any injury producing design, construction or assembly of the vehicle was found to arise out of the insured's ownership or use of the vehicle. (Id. at p. 54.) Moreover, the renovations were not an independent cause of the passenger's bodily injuries since "the only way in which [the passenger] could have been exposed to the claimed design risk was through the operation or use of the motor vehicle." (Id. at p. 55.) Almost prophetic of the situation presented here, the court commented that an auto exclusion like the one before us would not cover an insured's negligent brake repair or failure to replace worn tires before they suffer a blowout. (Id. at p. 55.)
Gurrola also bears features similar to the case presented here. (Gurrola v. Great Southwest Ins. Co., supra, 17 Cal. App.4th 65.) In Gurrola, the insured owned a welding business insured against business liabilities but excluding auto-related losses. (Id. at p. 67.) The insured rebuilt autos as a hobby, including a Bantam Coupe with a chassis he welded to the frame. (Ibid.) The insured and his passenger were killed while speeding in the auto, and another motorist injured. (Ibid.) The accident was caused by the insured's negligent driving and negligent reconstruction of the vehicle, including the *1205 welding. (Ibid.) The court denied coverage, finding that "the only way that [the other motorist or passenger] could have been exposed to the risk of the negligent welding was through the operation or use of the motor vehicle." (Id. at p. 68.) A homeowners or business liability policy provides "no coverage for auto-related accidents unless there are `"two negligent acts or omissions of the insured, one of which, independently of the excluded cause, renders the insured liable for the resulting injuries...."'" (Ibid., citations omitted.)
It is true, as appellant Providence points out, that not every court that has considered the matter has held that an auto exclusion precludes coverage of driving accidents caused by the insured's negligent auto repairs or renovations. The Second District, Division One, held that a homeowners policy excluding auto-related losses did cover injuries arising from the insured's negligent home repair of his vehicle's brakes. (Gonzales v. St. Paul Mercury Ins. Co. (1976) 60 Cal. App.3d 675, 677-681 [131 Cal. Rptr. 626].) But Gonzales concerned exclusionary language different from that presented here. In Gonzales, the exclusion was of damages arising out of "`the ownership, maintenance, operation [or] use ... of ... automobiles ... while away from the premises ...'" and the court held that the highlighted phrase modified all terms of the exclusion so that "liability arising from maintenance of the car on the insured's premises is not excluded." (Id. at pp. 678-679, italics added.) Whatever the wisdom of the Gonzales court's policy interpretation, Valley Forge's broad exclusion is not governed by it. Moreover, Gonzales's conclusion that an insured's negligent auto repairs are outside an auto exclusion has been universally disapproved in more recent California cases, including a case from another division of the Second District. (Gurrola v. Great Southwest Ins. Co., supra, 17 Cal. App.4th at pp. 68-69; Allstate Ins. Co. v. Jones (1983) 139 Cal. App.3d 271, 278, fn. 3 [188 Cal. Rptr. 557]; State Farm Fire & Cas. Co. v. Camara, supra, 63 Cal. App.3d at pp. 55-56.) We, too, decline to apply Gonzales here. The bodily injuries in the underlying actions arose out of the "ownership, maintenance, [or] use" of the insured's van and are therefore excluded from coverage under Valley Forge's commercial general liability policy.

B. The Transportation garage operations policy does not cover the underlying bodily

(4) The Transportation garage operations policy matches the Valley Forge policy in listing the named insured as "Paul Hifai DBA: Tennyson Mobil Service." The policy generally covers bodily injury caused by an accident and resulting from "garage operations." "Garage operations" includes the "ownership, maintenance or use" of garage premises, "all operations necessary or incidental to a garage business," and also specifically *1206 includes the ownership, maintenance or use of covered autos. However, covered autos for purposes of liability claims are limited to autos used in the garage business and not owned by the insured. The policy also contains a rental exclusion, excluding bodily injuries arising out of "an auto owned or sublet by an insured while rented, leased or loaned to another."
Appellant Providence dismisses the issue of whether the van is a "covered auto" and instead argues that the underlying bodily injuries are covered by the general premises liability and garage business provisions that encompass negligent auto repairs. As for the rental exclusion, appellant claims the underlying bodily injuries did not arise solely out of an auto owned by the insured while rented to another, but were independently caused by negligent auto repairs covered under the general liability provisions.
On the first point, it has been held that a garage's negligent auto maintenance was covered by a garage liability policy insuring bodily injury caused by accidents arising out of the "`ownership, maintenance or use'" of the garage premises and "`operations necessary or incidental thereto.'" (Miesen v. Bolich (1960) 177 Cal. App.2d 145, 149-150, 155 [1 Cal. Rptr. 912], italics omitted.) However, the second point  the rental exclusion  remains even if we assume that the underlying accident falls within the Transportation policy's general coverage. The rental exclusion is dispositive here.

1. The rented van was owned by Hifai, individually, and Hifai is the insured

The policy excludes bodily injury "arising out of ... an auto owned ... by an insured while rented, leased or loaned to another." (Italics omitted.) Clearly, the van was "rented, leased or loaned to another"; it was rented to the Nigerian musicians. Appellant Providence denies that the van was owned by an insured, again arguing that the owner was A-1 Rent-A-Car and the insured Tennyson Mobil Service. As discussed earlier, sole proprietorships operating under trade names are not distinct legal entities and, therefore, the van registered to Hifai's sole proprietorship, A-1 Rent-A-Car, was owned by Hifai individually and Hifai is the insured on policies issued to Hifai doing business as Tennyson Mobil Service, another sole proprietorship. Accordingly, the rented van is subject to the policy exclusion.

2. The bodily injury in the underlying actions arose out of the rented van's use

On a note similar to the one sounded above, appellant Providence argues that the bodily injuries in the underlying actions are outside the terms of the *1207 exclusion because the injuries did not solely "arise out of" an auto owned by an insured while rented to another. Appellant claims the injuries also arose out of negligent repair of the van's tire.
The Transportation policy excludes injuries "arising out of ... an auto" owned by the insured while rented to another, while the Valley Forge policy excludes injuries "arising out of the ownership, maintenance, [or] use ... of any ... `auto.'" While the Transportation policy displays an irksome lapse of grammar in referring to injuries arising out of an auto, instead of use of an auto, we believe it nevertheless clear in excluding auto-related injuries. Therefore, we are presented with essentially the same question discussed earlier: does an exclusion of injuries arising out of an auto's use preclude coverage of driving accidents caused by the insured's negligent auto repairs? The reasoning of Partridge and its later application in cases specifically resolving that question compels an affirmative answer. (State Farm Mut. Auto. Ins. Co. v. Partridge, supra, 10 Cal.3d at pp. 101-107; Gurrola v. Great Southwest Ins. Co., supra, 17 Cal. App.4th at pp. 67-70; State Farm Fire & Cas. Co. v. Camara, supra, 63 Cal. App.3d at pp. 53-56.)
No coverage exists under insurance policies excluding injuries arising out of an auto's use unless "the liability of the insured arises from his non-auto-related conduct, and exists independently of any `use' of his car." (State Farm Mut. Auto. Ins. Co. v. Partridge, supra, 10 Cal.3d at p. 103.) As with the negligently designed dune buggy of Camara, any van repair was auto related and the injuries arising from any negligent repairs were dependent upon the van's operation or use. (State Farm Fire & Cas. Co. v. Camara, supra, 63 Cal. App.3d at pp. 53-55.) The only way the plaintiffs in the underlying actions could have been exposed to the claimed negligent repair was through the operation or use of the auto. (Ibid.)
Appellant Providence seeks refuge in a case that found coverage under a garage liability policy with a rental exclusion. (Miesen v. Bolich, supra, 177 Cal. App.2d at pp. 147-155.) In Miesen, the insured service station operators maintained and rented trucks owned by another person. (Id. at pp. 148-149.) A man was injured while unloading furniture from one of the rented trucks, in a fall precipitated by negligently maintained truck side racks and stakes. (Id. at pp. 149, 155.) The insureds' garage liability policy excluded its application to rented autos. (Id. at pp. 149-150.) The court found coverage for the injuries under the policy, concluding that the cause of the accident was the "faulty maintenance of the truck, not the fact that the truck was rented to a third person...." (Id. at p. 155.)
Miesen is not controlling because there are significant differences between the policy language in that case and the policy language here, and Miesen *1208 predates Partridge and its authoritative evaluation of coverage for alleged auto-related injuries under policies with auto exclusions. In Miesen, the policy's list of exclusions stated "`This Policy does not apply: [¶] ... [¶] (b) to any automobile while rented to others by the named insured....'" (177 Cal. App.2d at p. 150, italics omitted.) Here, the policy states that "this insurance does not apply to bodily injury or property damage arising out of a. an auto owned or sublet by an insured while rented, leased or loaned to another...." (Original italics deleted; new italics added.) The Miesen policy did not require the court to ask if the accident arose out of the auto, as we are required to ask here, and as Partridge and its progeny likewise asked.[1] We conclude that the bodily injuries in the underlying actions arose out of an auto owned by an insured while rented to another and are therefore excluded from coverage under Transportation's garage operations policy.

DISPOSITION
The judgment is affirmed.
Dossee, J., and Swager, J., concurred.
NOTES
[1] Appellant's reliance on McConnell v. Underwriters at Lloyds (1961) 56 Cal.2d 637 [16 Cal. Rptr. 362, 365 P.2d 418], is likewise misplaced, since it predated Partridge, concerns dissimilar policy language, and is factually distinct.