[No. B216886. Second Dist., Div. Six. Nov. 15, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
TRAVIS EASTBURN, Defendant and Appellant.

**COUNSEL**

David A. Andreasen, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Linda C. Johnson and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**PERREN, J.**—Travis Eastburn fraudulently obtained over $20,000 by passing eight checks with the forged signatures of his 83-year-old employer, Arnold Sutherland. The checks were drawn on an account held by Sutherland in the name of his "dba,"[1] Sutherland & Associates (S & A). A jury subsequently convicted Eastburn of forgery from an elder adult (Pen. Code,[2] § 368, subd. (d)), grand theft by embezzlement (§ 487, subd. (a)), and two counts of commercial burglary (§ 459). In this appeal, Eastburn challenges the sufficiency of the evidence supporting his conviction under subdivision (d) of section 368. He contends the evidence effectively compelled the jury to find that the actual victim of his crime "was a business entity, and not an elder adult." We conclude that the law, be it civil or criminal, recognizes no distinction between an individual and a name under which he or she does business. We also conclude that the evidence presented in this case is sufficient to support the jury's finding that Eastburn either knew or should have known that the money he was stealing belonged to an elder adult as opposed to a business. Accordingly, we affirm.

## STATEMENT OF FACTS

Sutherland was born in 1923. In 1972, he started a home-based business under the dba name S & A, which he described as a "custom adhesive dispensing company." In 2005, Sutherland hired Dawna Shaw to manage the office and conduct sales. When Shaw left the job in August 2006, she recommended Eastburn as her replacement. Shaw, who was a close friend of Eastburn's fiancée Heidi Kluth, described Eastburn to Sutherland as a "trustworthy, helpful man" who would do well in the position. Sutherland hired Eastburn because he believed he might be a good candidate to take over the business.

During Eastburn's employment, S & A's monetary transactions were conducted through a business checking account at Wells Fargo Bank. The checks were imprinted with the name "Sutherland & Associates," while the monthly bank statements clearly identified the account holder as "Arnold H. Sutherland dba Sutherland Associates." Eastburn often prepared checks for Sutherland's signature, and was also responsible for reconciling all business expenditures with the monthly bank statements.

---

[1] The designation "dba" stands for "doing business as."
[2] All further undesignated statutory references are to the Penal Code.

Eastburn lasted on the job for about six weeks, after which Sutherland fired him for poor job performance. During Eastburn's employment, he brought in only one account that resulted in Sutherland losing about $4,000.

Before Eastburn started working for Sutherland, he and Kluth were having trouble paying their bills. About a week after Eastburn began working, Shaw noticed that he started buying "a lot of big ticket items" such as a new television and an engagement ring for Kluth. On one occasion, Eastburn took a friend to the Los Angeles County Fair and spent about $1,000. Eastburn also told Shaw he had prepaid his rent for the remainder of the year and bragged about the large bonuses Sutherland was paying him.

Shaw knew from her previous employment that Sutherland "wouldn't be paying that amount of money and [Eastburn] wouldn't be making that amount of money in just a short amount of time." When Shaw brought in new customers, Sutherland gave her a small bonus or paid her a commission equaling no more than 10 percent of the total sale. The largest bonus Shaw received was about $200. Shaw also knew that S & A's customers had 30 to 90 days to pay their bill, and that Sutherland did not issue bonuses until after payments had been received.

In September 2006, Sutherland hired Katharine Rogers to replace Eastburn. At the time of trial, Rogers had been working for S & A for two years. Rogers was initially paid bonuses equal to 1 percent of her sales, and presently received a 5 percent bonus. The largest bonus Rogers had ever received for one account was about $400.

Rogers was attempting to reconcile S & A's bank account for the month of September 2006 when she noticed that check numbers were missing in the QuickBooks program. Rogers also found entries stating "void bonus" or "void commission." In reviewing the bank statement, she discovered that Eastburn was the payee on checks made out for "humongous amounts." Underneath a file folder in a desk drawer, she found a missing page from an August bank statement that included copies of checks made out to Eastburn. S & A's records also reflected that only one new account had been opened during Eastburn's employment. Although a total of $9,086.39 was invoiced on the account, no money had been paid and the debt was sent to collections.

When Rogers conveyed this information to Sutherland, he was "flabbergasted." It was subsequently discovered that Eastburn had cashed eight business checks with Sutherland's forged signature that were made out to

Eastburn for a total of $22,850. The checks also included notations such as "bonus for new account" or "commission for sales," even though Sutherland had only given Eastburn one $50 bonus and had not authorized any others. The account from which the money was stolen contained Sutherland's "entire life savings" of $60,000.

Eastburn testified at trial on his own behalf. According to Eastburn, he and Sutherland had verbally agreed that he would receive "ten percent off of the gross" as soon as he obtained an order for machinery and placed the order with a vendor. Eastburn brought in about six new accounts and made more than $9,000 in sales. He used a computer program to determine the amount of his bonus checks, and Sutherland signed the checks when they were presented to him. When Eastburn cashed the checks, he was led to believe the teller had called Sutherland for verification. The day before Eastburn's last day of work, Sutherland told him he needed someone who could work from 8:00 a.m. to 5:00 p.m. and said he could not afford to pay him anymore.

Eastburn's fiancée, mother and brother all testified that his prior petty theft conviction did not alter their belief that he is "brutally honest." Kluth also testified to witnessing Sutherland hand Eastburn a check on two occasions, while Eastburn's mother said she had been to the bank with Eastburn on two different occasions when the teller had made a telephone call prior to cashing the check.

## DISCUSSION

Eastburn's sole claim on appeal is that the evidence is insufficient to support his conviction of forgery from an elder adult, in violation of subdivision (d) of section 368. He claims the evidence merely supports a finding that he stole money from Sutherland's business, as opposed to Sutherland himself. We conclude otherwise.

■ As the jury was instructed, Eastburn was guilty of forgery if he passed checks with signatures he knew to be forged with the intent to defraud. (§ 470, subd. (d); CALCRIM No. 1900.) In convicting Eastburn under subdivision (d) of section 368, the jury found that he committed the forgery "with respect to the property or personal identifying information" of someone he either knew or should have known to be an elder adult. (§ 368, subd. (d).) The evidence presented at trial is sufficient to support that finding. Contrary to Eastburn's claim, it is of no moment whether his victim is identified as Sutherland, Sutherland & Associates, or Arnold H. Sutherland dba Sutherland Associates. There is no legal distinction between an individual

and the fictitious names under which he or she does business. "The designation 'dba' or 'doing business as' simply indicates that [an individual] operates his sole proprietorship under a fictitious business name. [Citation.] 'The designation "d/b/a" means "doing business as" but is merely descriptive of the person or corporation who does business under some other name. Doing business under another name does not create an entity distinct from the person operating the business.' [Citation.] The business name is a fiction, and so too is any implication that the business is a legal entity separate from its owner." (*Providence Washington Ins. Co. v. Valley Forge Ins. Co.* (1996) 42 Cal.App.4th 1194, 1200 [50 Cal.Rptr.2d 192].) " '[T]he significance [of the term "doing business as"] is, thus, much like that given to other phrases in common use in the law for slightly different purposes, "alias" . . . "a/k/a" or "also known as" . . . .' [Citations.]" (*Pinkerton's, Inc. v. Superior Court* (1996) 49 Cal.App.4th 1342, 1348–1349 [57 Cal.Rptr.2d 356].)

 Eastburn asserts that this principle may be well settled in the civil arena but is without precedent in criminal justice. We discern no reason why it should not apply: "There is a first time for everything . . . ." (*U.S. v. Nippon Paper Industries Co., Ltd.* (1st Cir. 1997) 109 F.3d 1, 6.) The elder abuse law is intended to provide special protection for elder adults, whose advanced age may render them particularly susceptible to criminal opportunists.[3] Eastburn exploited a position of trust to loot a bank account that contained an 83-year-old man's life savings. Sutherland is no less a victim than if the money had been stolen directly from his pocket. This is precisely the type of crime the Legislature contemplated in enacting section 368.

 We also reject Eastburn's claim that the evidence is insufficient to support the jury's finding that he knew or should have known his victim was an elder adult, and not merely a business held in an elder adult's name. The bank accounts Eastburn reviewed as part of his job duties plainly identified the account holder as Arnold H. Sutherland dba Sutherland Associates. Eastburn also knew that he was Sutherland's sole employee, that the business was run out of Sutherland's house, and that the checks he forged could not be cashed without Sutherland's signature. Moreover, Sutherland testified that the account from which the checks were drawn contained his "entire life savings." From this evidence, the jury could reasonably infer that Eastburn either knew or had reason to know that the money he was stealing belonged to Sutherland.

---

[3] Subdivision (a) of section 368 states the Legislature's finding that elder adults are deserving of special protection against crimes because they "may be confused, on various medications, mentally or physically impaired, or incompetent, and therefore less able to protect themselves, to understand or report criminal conduct, or to testify in court proceedings on their own behalf."

The judgment is affirmed.

Gilbert, P. J., and Yegan, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 23, 2011, S188437.