Filed 3/30/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G061264 |
| v. | (Super. Ct. No. 20HF1486) |
| JACKIE B. MARQUEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Michael A. Leversen, Judge. Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \*

A "'caretaker' means a person who has the care, custody, or control of, or who stands in a position of trust with, an elder or a dependent adult." (Pen. Code, § 368, subd. (i).)[1] An "elder" is a person 65 years of age or older. (§ 368 (b).) A person who is a caretaker who steals from an elder is guilty of violating section 368 (e). A person who is not a caretaker who steals from an elder "and who knows or reasonably should know that the victim is an elder" is guilty of violating section 368 (d). Depending on the value of the stolen property, both crimes are "wobblers" punishable to the same degree.

Over several months, Jackie B. Marquez stole about $100,000 from her brother-in-law Robert C., who was then about 80 years old. The prosecution elected to charge Marquez with eight felony counts of elder theft as a noncaretaker. (§ 368 (d).) A jury found Marquez guilty of all counts. The court imposed a five-year sentence.

Marquez contends the trial court erred by failing to instruct the jury that the prosecution needed to prove she was "not a caretaker." We disagree. We hold that a defendant's status as a noncaretaker is not an element of section 368 (d); rather, it is more properly characterized as a charging option for the prosecution.

Here, the trial court instructed the jury that the prosecution needed to prove the required elements of the crime: (1) Marquez committed a theft, (2) the victim was an elder, (3) Marquez stole more than $950, and (4) Marquez knew, or reasonably should have known the victim was at least 65 years old. Thus, we affirm the judgment.

I

FACTS AND PROCEDURAL BACKGROUND

When Robert was 79 years old, he started showing signs of dementia, although he appeared to be able to care for himself. Robert moved in with Marquez,

---

[1] Further undesignated statutory references are to the Penal Code. From this point forward, we will also omit the word "subdivision" and/or its abbreviation.

signed a lease, and began renting a room in her house for $1,345 per month. Over the next 22 months, Marquez transferred $102,971.92 from Robert's accounts to her accounts (in excess of the amount owed for rent). Among other things, Marquez used Robert's money to buy furniture, to do home repairs, to pay her taxes, and to give cash to her son.

The prosecution filed an information charging Marquez with eight counts of elder theft. (§ 368 (d).) During a jury trial, Marquez claimed her responsibilities had changed during the time Robert lived with her, the lease had been verbally modified to $2,000 per month, and Robert had given her multiple gifts of cash. The jury found Marquez guilty of all eight counts. The court imposed a five-year sentence.

## II

## DISCUSSION

Marquez contends the trial court failed to instruct the jury sua sponte on all the elements of elder theft under section 368 (d). We disagree.

We review instructional error claims under a de novo standard of review. (*People v. Fiore* (2014) 227 Cal.App.4th 1362, 1378.) "The proper test for judging the adequacy of instructions is to decide whether the trial court 'fully and fairly instructed on the applicable law . . . .'" (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.)

In a criminal case, a trial court has a sua sponte duty to instruct the jury as to all the elements of the alleged crimes. (*People v. Owen* (1991) 226 Cal.App.3d 996, 1004.) The "elements" of a crime are defined as: "Those *constituent* parts of a crime which must be proved by the prosecution to sustain a conviction." (Black's Law Dict. (6th ed. 1990) p. 520, col. 2, italics added.) The word "constituent" is defined as "an essential part." (Webster's 11th Collegiate Dict. (2007) p. 267, col. 2.) "'The elements of crimes are of three varieties: actus reus, mens rea and attendant circumstances.'" (*People v. Mackreth* (2020) 58 Cal.App.5th 317, 330.)

Section 368 (d) provides: "A person who is not a caretaker who violates

3

any provision of law proscribing theft, embezzlement, forgery, or fraud, or who violates Section 530.5 proscribing identity theft . . . and who knows or reasonably should know that the victim is an elder or a dependent adult, is punishable" as a felony or a misdemeanor, depending on the amount of property taken. (§ 368, subds. (1) & (2).)

Courts have long presumed (without deciding) that the relevant provisions of section 368 are substantive offenses, rather than sentencing enhancements. (See, e.g., *People v. Eastburn* (2010) 189 Cal.App.4th 1501, 1505 [upholding conviction for elder theft]; *People v. Brock* (2006) 143 Cal.App.4th 1266, 1270 [reversing conviction for elder theft].) This presumption makes sense when the statute as whole is considered. For instance, a sentencing provision of section 368 (l) provides: "*Upon conviction for a violation* of subdivision (b), (c), (d), (e), or (f), the sentencing court shall also consider issuing a restraining order . . . ." (Italics added.)

Here, the trial court instructed the jury on the elements of section 368 (d) using two official jury instructions. (See Cal. Rules of Court, rule 2.1050(a) ["The California jury instructions approved by the Judicial Council are the official instructions for use in the state of California"].) The court used CALCRIM No. 1800 for the crime of theft by larceny (§ 484), and CALCRIM No. 1807 for the crime of elder theft (§ 368 (d)).

"As part of the elements of the crimes charged in Counts 1-8 (Theft from an Elder), the People must prove that the defendant committed a theft by larceny. [¶] To prove that the defendant is guilty . . . the People must prove that: [¶] 1. The defendant took possession of property owned by someone else; [¶] 2. The defendant took the property without the owner's consent; [¶] 3. When the defendant took the property she intended to deprive the owner of it . . . ; [¶] AND [¶] 4. The defendant moved the property . . . and kept it for any period of time, however brief." (CALCRIM No. 1800.)

"The defendant is charged in Counts 1-8 with theft of property from an elder in violation of Penal Code section 368. [¶] To prove that the defendant is guilty of

4

this crime, the People must prove that: [¶] 1. The defendant committed theft; [¶] 2. The property taken was owned by an elder; [¶] 3. The property, goods, or services obtained was worth more than $950; [¶] AND [¶] [4. The defendant knew or reasonably should have known that the owner of the property was an elder. [¶] . . . [¶] An *elder* is someone who is at least 65 years old." (CALCRIM No. 1807.)

"All criminal defendants have the right to 'a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" (*People v. Merritt* (2017) 2 Cal.5th 819, 824.) We find that by using the relevant portions of the two official jury instructions, the trial court instructed the jury on every element of the crime of elder theft. (§ 368 (d).) Thus, we find the trial court fulfilled its sua sponte instructional obligations and did not commit error.

Marquez argues by using the words "not a caretaker" in section 368 (d), the Legislature intended that a defendant's status as "not a caretaker" is to be treated as an element of the crime and therefore CALCRIM No. 1807 is wrong. We disagree.

This is an issue of statutory interpretation. "Our fundamental task is to determine the legislative intent and effectuate the law's purpose, giving the statutory language its plain and commonsense meaning. We examine that language, not in isolation, but in the context of the statutory framework as a whole to discern its scope and to harmonize various parts of the enactment. [Citation.] 'If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.'" (*Mendoza v. Fonseca McElroy Grinding Co., Inc.* (2021) 11 Cal.5th 1118, 1125.)

Section 368 lists several crimes against elders or dependent adults, including crimes of physical abuse and endangerment. And again, section 368 (d)

5

provides: "A person who is *not a caretaker* who violates any provision of law proscribing theft, embezzlement, forgery, or fraud, or who violates Section 530.5 proscribing identity theft . . . and who knows or reasonably should know that the victim is an elder or a dependent adult, is punishable" as a misdemeanor or a felony. (Italics added.) Similarly, there are other crimes within section 368, that "do not require that a defendant be in a caretaker relationship with the victim." (*People v. Matye* (2008) 158 Cal.App.4th 921, 926, fn. 2, italics added ["Defendant was convicted of violating subdivisions (b)(1) and (f) of section 368, which apply to *any person* who commits the acts specified therein"].)

Conversely, section 368 (e) provides: "*A caretaker* of an elder or a dependent adult who violates any provision of law proscribing theft, embezzlement, forgery, or fraud, or who violates Section 530.5 proscribing identity theft with respect to the property or personal identifying information of that elder or dependent adult is punishable as" a misdemeanor or felony. (Italics added.) A "'caretaker' means a person who has the care, custody, or control of, or who stands in a position of trust with, an elder or a dependent adult." (§ 368 (i).) Under section 368 (e), the caretaker is not required to know, or reasonably know, that the victim was an elder or a dependent adult.

Section 368 (d) and section 368 (e) can both be charged as misdemeanors or felonies (the crimes are "wobblers"), depending on the value of the property stolen, and not on the person's status as a "caretaker" or "not a caretaker." Both crimes provide for the same aggravated punishments. (§ 368 (d)(1)-(2), (e)(1)-(2).) For most theft crimes, the sentencing triad for a felony violation is 16 months, two years, or three years. (§ 489 (c)(1).) For theft crimes against elders and dependent adults, the sentencing triad is two, three, or four years. (§ 368 (d)(1)-(2), (e)(1)-(2).)

Prior to 1998, section 368 only applied to thefts committed by caretakers. (See Stats. 1997, ch. 698, § 1.) In 1998, the Legislature expanded the scope of section

6

368 to include all perpetrators who steal, embezzle, or commit frauds upon elderly victims, regardless of whether the perpetrator is a caretaker or not. (See Stats.1998, ch. 934, § 1; Stats. 1998, ch. 935 § 2; Stats. 1998, ch. 936, § 7; Stats. 1998, ch. 936, § 7.5.)

The intent of the Legislature was to "target criminals who victimize elders" even though they do not fit within the statutory definition of a "caretaker." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 880 (1997-1998 Reg. Sess.) as amended Jan. 12, 1998, p. 2.) "The elder abuse law is intended to provide special protection for elder adults, whose advanced age may render them particularly susceptible to criminal opportunists." (*People v. Eastburn* (2010) 189 Cal.App.4th 1501, 1506.)

Section 368 is intended to punish more harshly those who steal from elders or dependent adults, but who could only have previously been prosecuted under general thefts statutes (grand theft or petty theft) that carry lower punishments. (See Legis. Council's Dig., Sen. Conc. Amends to Assem. Bill No. 880 (1997-1998 Reg. Sess.); Sen. Rules Committee, Off. of Sen. Floor Analyses, 3d Reading Analysis of Assem. Bill No. 880 (1997-1998 Reg. Sess.) as amended July 7, 1998.)

Understood in context, section 368 provides that those defendants charged with theft who have an affirmative duty to protect the victim—caretakers—are subject to increased penalties under section 368 (e), but only if the prosecution proves the heightened duty of care (caretaker status). On the other hand, those defendants charged with theft who have no affirmative duty to protect the victim—noncaretakers—are also subject to increased penalties under section 368 (d), but only if the prosecution proves actual or reasonable knowledge of the adult victim's age or dependency. Therefore, the essential requirements of the two relevant statutes are: 1) the defendant's caretaker status under section 368 (e); or 2) the defendant's knowledge under 368 (d).

We hold that a defendant's status as a noncaretaker is not an essential act, an essential mental state, or an essential attendant circumstance under section 368 (d);

7

thus, it is not an element of the crime. (See *People v. Mackreth*, *supra*, 58 Cal.App.5th at p. 330 ["'The elements of crimes are of three varieties: actus reus, mens rea and attendant circumstances'"].) Rather, the defendant's status as a noncaretaker is a relevant consideration for the prosecution when charging the offense (both crimes carry the same penalty). That is, if a person was stealing from an elder, and was arguably a caretaker, but the prosecution lacked proof of the caretaker element under section 368 (e), the prosecution might elect to file the charge under section 368 (d), and then be required to prove the knowledge element. Under section 368 (d), the person's status as a caretaker (or "not a caretaker") would not be essential for the prosecution to secure a conviction. Similarly, under section 1170 (e), an accused caretaker's knowledge of the victim's age (or lack of knowledge) would not be essential for the prosecution to secure a conviction.

In sum, given the entire scheme of section 368 and its legislative history, we find the Legislature did not intend that a defendant's status as noncaretaker was to be treated as a required element of section 368 (d). Rather, to bring noncaretakers within the ambit of section 368, and to punish noncaretakers to the same degree as caretakers, the Legislature effectively substituted one element of the elder or dependent adult theft crime under section 368 (e)—caretaker status—with a different element under section 368 (d)—actual or reasonable knowledge that the victim is an elder or a dependent adult.

Marquez's novel interpretation of section 368 (d)—treating "not a caretaker" as an element of the crime—would require the prosecution to prove a nonessential fact about the defendant. This proposed interpretation would also place the burden on the prosecution to prove a negative, which would tend to further frustrate the policy goals of the Legislature by making the crime unnecessarily more difficult to prove. (See *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 ["Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute"]; *Franklin v. Reiner* (1857) 8 Cal. 340, 341 ["The respondent could not be expected to prove a

8

negative, that he never had notice"].) Indeed, under Marquez's notion concerning the elements of section 368 (d), the prosecution would have been required to prove Marquez did <u>not</u> stand in a position of trust with her brother-in-law Robert, who was apparently suffering from varying levels of dementia, and who was deceased at the time of the trial.

Jury instructions are not legal authority, but we note that our interpretation is consistent with CALCRIM No. 1807, which does not treat the "not a caregiver" phrase in the statute as an additional element of section 368 (d). (See *People v. Morales* (2001) 25 Cal.4th 34, 48, fn. 7 [jury instructions are not themselves legal authority, but they may accurately reflect the state of the law].) Further, we note that in the 25 years since section 368 was amended to include subdivision (d) as a separate theft crime, no published opinion has ever found "not a caretaker" status to be an element under 368 (d), nor has any appellate court ever been asked to consider the issue, to the best of our knowledge.[2] (See, e.g., *People v. Baratang* (2020) 56 Cal.App.5th 252, 257 ["The standard CALCRIM No. 1807 instruction states that the People must prove four elements for felony elder theft under section 368 (d)"]; *People v. Brock, supra,* 143 Cal.App.4th at p. 1281 ["defendant was convicted of violating Penal Code section 368, subdivision (d) . . . , crimes against elder or dependent adults, by committing a theft of money or personal property exceeding $400 knowing that the victim was an elder or dependent adult"].)

Marquez quotes *People v. Valencia* (2017) 3 Cal.5th 347, 357, for the proposition "we generally must 'accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose,' and have warned that '[a] construction making some words surplusage is to be avoided.'" This is known as the "canon against surplusage." (*Sturgeon v. County of Los Angeles* (2015) 242 Cal.App.4th 1437, 1447 (*Sturgeon*).) Marquez argues "had the Legislature thought there need be no

---

[2] Because this appears to be a matter of first impression, we are certifying this opinion for publication. (See Cal. Rules of Court, rule 8.1105(c)(1)-(2).)

distinction between caretakers and noncaretakers, the 'not a caretaker' language would have been omitted from subdivision (d)(1), and the subdivision would simply prohibit theft by anyone 'who knows or reasonably should know that the victim is an elder or dependent adult.'" We disagree with the premise, but we agree with the observation.

That is, the Legislature did, in fact, intend for there to be a distinction between caretakers and noncaretakers. This is why the statute does not include a knowledge element for caretakers charged under section 368 (e), but it does include a knowledge element for any other persons charged under section 368 (d). However, we agree with Marquez to the extent that the Legislature could have made the statute clearer by simply referring to *any person* under section 368 (d), rather than by using the phrase "not a caretaker" because that language is unnecessary and superfluous.

Although courts generally interpret a statute "so as to eliminate surplusage, there is no rule of construction requiring us to assume that the Legislature has used the most economical means of expression in drafting a statute." (*Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 772-773.)

Indeed, in *People v. Valencia*, *supra*, 3 Cal.5th at page 357, after restating the canon against surplusage, the Supreme Court elaborated that "'[t]he words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.'" The Court stated, "that statutory language, *even if it appears to have a clear and plain meaning when considered in isolation*, may nonetheless be rendered ambiguous when the language is read in light of the statute as a whole or in light of the overall legislative scheme." (*Id.* at p. 360, italics added.)

"The canon against surplusage should not be invoked when it leads to an unreasonable result. The canon against surplusage is not absolute." (*Sturgeon v. County of Los Angeles*, *supra*, 242 Cal.App.4th at p. 1448, italics omitted ["If invocation of the

10

canon results in an unreasonable reading of the legislation, it should be discarded"]; *People v. Raybon* (2021) 11 Cal.5th 1056, 1070-1071, fn. 10 ["'like all . . . interpretive canons, the canon against surplusage is a guide to statutory interpretation and is not invariably controlling'"].)

The related maxim "'[s]uperfluity does not vitiate'" means "that the presence of arguably unnecessary terms in a statute should not, by itself, produce an interpretation that will defeat the Legislature's central aim in enacting the law." (See *General Development Co., L.P. v. City of Santa Maria* (2012) 202 Cal.App.4th 1391, 1395.) For instance, if the Legislature made it an aggravated theft crime to steal a "striped zebra" (a redundancy), the prosecution would likely not have to prove the stolen zebra was "striped."

When section 368 (d) is read in isolation, it might appear to require that the prosecution has to prove a defendant is "not a caretaker" in order to secure a conviction. However, the phrase "not a caretaker" is irrelevant when read in the context of section 368 (e), which does, in fact, state the relevant requirement of being a caretaker.

Marquez also argues the elder theft jury instruction (CALCRIM No. 1807) deprived her of presenting a "caretaker defense." Marquez argues, "had the jury been properly instructed, the question would have been to what extent did [Marquez] exceed or abuse her caretaking position—for example, was the $2,000 monthly charge . . . larceny in light of [Marquez's] then-expanded caretaking duties." We disagree.

As discussed, the Legislature's intent in amending section 368 was plainly to expand the scope of the elder and dependent adult theft statute, which had previously been limited to caretakers. It would defy logic to presume the Legislature also intended to somehow create a "caretaker defense" for persons other than caretakers who are charged with committing thefts against elders or dependent adults. (See § 368 (d).)

Moreover, Marquez's defense was essentially that she did not commit the

crime of theft.  (See § 484.)[3]  Marquez's purported role as a caretaker may have been somewhat relevant as to her defense (to try to show that she did not intend to steal or she had the victim's consent), but there is no question the trial court properly instructed the jury on the elements of theft.  Therefore, we find Marquez was not somehow precluded from presenting any perceived defenses to the crime of elder theft under section 368 (d), through the court's use of CALCRIM Nos. 1800 and 1807.

To reiterate and conclude, we find the Legislature intended to impose harsher punishments on all persons who commit thefts against elders and dependent adults, be they caretakers or not.  We hold that a defendant's status as a noncaretaker is not a required element of section 368 (d), because a contrary holding would serve no purpose and would frustrate the Legislature's intent.  Thus, we find the trial court committed no instructional errors.[4]

---

[3] The four elements of theft by larceny are the defendant's (1) taking of property owned by someone else, (2) without consent, (3) with the intent to permanently deprive the owner of the property, and (4) movement of the property.  (See § 484 (a).)

[4] Given our holding that a defendant's status as a noncaretaker is not an element of section 368 (d), it is not necessary for us to analyze Marquez's additional argument that the prosecution presented insufficient evidence she was "not a caretaker."

## III

## DISPOSITION

The judgment is affirmed.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


GOETHALS, J.